1

2

3

4

5

6

7

8

The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>HUUUGE, INC., a Delaware corporation,<br><br>                Defendant. | No. 3:18-cv-05276-RBL<br><br>HUUUGE INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION<br><br>NOTE ON MOTION CALENDAR: SEPTEMBER 24, 2018<br><br>ORAL ARGUMENT REQUESTED |

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................. 1

     A.     The Allegations in the Complaint ...................................................... 1

     B.     Players of the App Accept HI's Terms of Use. .................................. 2

     C.     Plaintiff Accepted HI's Terms of Use by Using HI's App for Over a Year. ................................................................................................. 4

     D.     Plaintiff Is Bound by the Arbitration Agreement and Class Waiver Contained in HI's Terms. .................................................................. 5

     E.     Plaintiff Seeks to Represent a Class Barred by the Arbitration Agreement. ........................................................................................ 6

III.   LEGAL STANDARD ..................................................................................... 6

IV.   ARGUMENT .................................................................................................. 8

     A.     The FAA Requires Enforcement of Arbitration Agreements and Reflects the Strong Federal Policy Favoring Arbitration. .................................. 8

     B.     Online Contracts Accepted by Conduct Are Valid and Enforceable. .................. 9

     C.     The Design and Content of the App Screen Provided Sufficient Notice to Plaintiff of HI's Terms. ................................................................... 10

     D.     Plaintiff Was Repeatedly Exposed to HI's Terms During His Year of Play. ................................................................................................. 15

     E.     Plaintiff's Claim Falls Within the Scope of the Arbitration Agreement. ........... 17

     F.     The Arbitration Agreement and Class Action Waiver Are Enforceable. ........... 19

     G.     The Arbitrator Must Resolve Any Further Challenges to the Arbitration Agreement. ...................................................................................... 21

     H.     The Court Should Compel Arbitration and Stay This Action. ......................... 22

V.     CONCLUSION ............................................................................................. 22

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - i
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Centurion Bank v. Stratman*,
  172 Wn. App. 667 (2012) ...........................................................................9

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ............................................................................6, 19

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ...................................................................... *passim*

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ...........................................................................6, 17

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
  2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017), *report and recommendation
  adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018), *appeal
  filed*, No. 18-607 (2d Cir. 2018) ..............................................................16

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ..................................................................21

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
  622 F.3d 996 (9th Cir. 2010) .....................................................................7

*Britton v. Co-op Banking Grp.*,
  4 F.3d 742 (9th Cir. 1993) .......................................................................18

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
  2005 WL 756610 (N.D. Cal. April 1, 2005) .................................10, 15

*Cayanan v. Citi Holdings, Inc.*,
  928 F. Supp. 2d 1182 (S.D. Cal. 2013) ....................................................18

*Chico v. Hilton Worldwide, Inc.*,
  2014 WL 5088240 (C.D. Cal. Oct. 7, 2014) ............................................8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) .............................................................8, 18

*Comedy Club, Inc. v. Improv W. Assocs.*,
  553 F.3d 1277 (9th Cir. 2009) ...................................................................6

*Coneff v. AT&T Corp.*,
  673 F.3d 1155 (9th Cir. 2012) .............................................................7, 19

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Coppock v. Citigroup, Inc.*,
2013 WL 1192632 (W.D. Wash. Mar. 22, 2013)..................................................7, 18, 19, 22

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985) ............................................................................................................8, 22

*DeVries v. Experian Info. Sols., Inc.*,
2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ..................................................................11, 14

*DIRECTV, Inc. v. Imburgia*,
136 S. Ct. 463 (2015) .........................................................................................................8, 19

*Ekin v. Amazon Servs., LLC*,
84 F. Supp. 3d 1172 (W.D. Wash. 2014) ..........................................................................7, 18

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ...........................................................................................................19

*Erwin v. Cotter Health Ctrs.*,
161 Wn.2d 676 (2007).............................................................................................................9

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016)..................................................................................11

*Fagerstrom v. Amazon.com, Inc.*,
141 F. Supp. 3d 1051 (S.D. Cal. 2015),
*aff'd sub nom. Wiseley*, 709 F. App'x 862 (9th Cir. 2017) ...............................................9, 20

*Ferguson v. Corinthian Colleges, Inc.*,
733 F.3d 928 (9th Cir. 2013) ...................................................................................................7

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ............................................................................................................7, 9

*Friedman v. Guthy-Renker LLC*,
2015 WL 857800 (C.D. Cal. Feb. 27, 2015) ...................................................................14, 16

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..............................................................11, 12, 13, 16

*Goldman, Sachs & Co. v. City of Reno*,
747 F.3d 733 (9th Cir. 2014) ...................................................................................................9

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ............................................................................................................7, 20

*Handy v. Logmein, Inc.*,
2016 WL 4062102 (E.D. Cal. Jan. 27, 2016) ........................................................................15

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - iii
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Hauenstein v. Softwrap Ltd.*,
    2007 WL 2404624 (W.D. Wash. 2007) ...................................................20

*Hertzke v. State Dep't of Ret. Sys.*,
    104 Wn. App. 920 (2001)........................................................................9

*Himber v. Live Nation Worldwide, Inc.*,
    2018 WL 2304770 (E.D.N.Y. May 21, 2018)........................................12

*Johnson v. Whitman*,
    1 Wn. App. 540 (1969)............................................................................9

*JP Morgan Chase Bank, N.A. v. Jones*,
    2016 WL 1182153 (W.D. Wash. Mar. 28, 2016).....................................8

*Kilgore v. Keybank, N.A.*,
    718 F.3d 1052 (9th Cir. 2013)...............................................................19

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
    137 S. Ct. 1421 (2017) .............................................................................7

*Kwan v. Clearwire Corp.*,
    2012 WL 32380 (W.D. Wash. Jan. 3, 2012) .....................................9, 10

*McKee v. Audible, Inc.*,
    2017 WL 4685039 (C.D. Cal. Jul. 17, 2017) .......................9, 10, 11, 14

*McLellan v. Fitbit, Inc.*,
    2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ......................................21

*Metter v. Uber Techs., Inc.*,
    2017 WL 1374579 (N.D. Cal. Apr. 17, 2017),
    *appeal filed*, No. 17-16027 (9th Cir. 2017) .................................13, 16

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ......................................................10, 11, 16

*Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.*,
    820 F.2d 1531 (9th Cir. 1987) ...............................................................18

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ...............................................................................18

*Mohamed v. Uber Techs., Inc.*,
    237 F. Supp. 3d 719 (N.D. Ill. 2017)......................................................15

*Mortensen v. Bresnan Commc'ns, LLC*,
    722 F.3d 1151 (9th Cir. 2013).............................................................6, 7

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - iv
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983) ............................................................................................8

*Nelson v. McGoldrick*,
 127 Wn.2d 124 (1995)....................................................................................20

*Nguyen v. Barnes & Noble, Inc.*,
 763 F.3d 1171 (9th Cir. 2014) ................................................................ *passim*

*Nicosia v. Amazon.com, Inc.*,
 834 F.3d 220 (2d Cir. 2016) ...............................................................9, 14, 16

*Peters v. Amazon Servs. LLC*,
 2 F. Supp. 3d 1165 (W.D. Wash. 2013),
 *aff'd*, 669 F. App'x 487 (9th Cir. 2016) ...........................................................6, 7

*Preston v. Ferrer*,
 552 U.S. 346 (2008) .....................................................................................6, 17

*Register.com, Inc. v. Verio, Inc.*,
 356 F.3d 393 (2d Cir. 2004) ...........................................................................15

*Rent-ACenter, W., Inc. v. Jackson*,
 561 U.S. 63 (2010) ..........................................................................................21

*Republic of Nicaragua v. Standard Fruit Co.*,
 937 F.2d 469 (9th Cir. 1991) ............................................................................6

*Sanchez v. Valencia Holding Co.*,
 61 Cal. 4th 899 (2015)....................................................................................20

*Schnabel v. Trilegiant Corp.*,
 697 F.3d 110 (2d Cir. 2012) ...........................................................................10

*Shanghai Commercial Bank Ltd. v. Chang*,
 189 Wn.2d 474 (2017)......................................................................................9

*Shearson/Am. Express, Inc. v. McMahon*,
 482 U.S. 220 (1987) ..........................................................................................7

*Signavong v. Volt Mgmt. Corp.*,
 2007 WL 1813845 (W.D. Wash. June 21, 2007) ........................................8, 20

*Simula, Inc. v. Autoliv, Inc.*,
 175 F.3d 716 (9th Cir. 1999) .......................................................................7, 18

*Smith v. Vmware, Inc.*,
 2016 WL 54120 (N.D. Cal. Jan. 5, 2016)........................................................18

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - v
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Snap-On Bus. Solutions Inc. v. O'Neil & Assocs., Inc.*,
   708 F. Supp. 2d 669 (N.D. Ohio 2010) ...................................................................12

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984) ..................................................................................................17

*Spam Arrest, LLC v. Replacements, Ltd.*,
   2013 WL 4675919 (W.D. Wash. Aug. 29, 2013)..................................................8, 9

*Specht v. Netscape Commcn's Corp.*,
   306 F.3d 17 (2d Cir. 2002) .....................................................................................11

*Starke v. Gilt Groupe, Inc.*,
   2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ........................................................11

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ................................................................................17

*Tuminello v. Richards*,
   2012 WL 750305 (W.D. Wash. Mar. 8, 2012),
   *aff'd*, 504 F. App'x 557 (9th Cir. 2013) ................................................................17

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) ................................................................................................17

*Van Tassell v. United Mktg. Grp., LLC*,
   795 F. Supp. 2d 770 (N.D. Ill. 2011)......................................................................10

*Velazquez v. Sears, Roebuck & Co.*,
   2013 WL 4525581 (S.D. Cal. Aug. 26, 2013).........................................................19

*Wiseley v. Amazon.com., Inc.*,
   709 F. App'x 862 (9th Cir. 2017)..........................................................................7, 9

*Zuver v. Airtouch Commc'ns*,
   153 Wn.2d 293 (2004)..............................................................................................20

**Statutes**

9 U.S.C. § 2 ...........................................................................................................1, 8

9 U.S.C. § 3 ..............................................................................................................22

9 U.S.C. § 4 ................................................................................................................8

9 U.S.C. § 16 ............................................................................................................22

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - vi
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**Other Authorities**

AAA Rule R-7(a),
     https://www.adr.org/sites/default/files/CommercialRules_Web.pdf....................................21

Black's Law Dictionary 1228 (10th ed. 2014) ...........................................................................11

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## I.      INTRODUCTION

Defendant Huuuge, Inc. ("HI") moves to compel arbitration and to stay this action commenced by Plaintiff Sean Wilson.  Plaintiff agreed to HI's Terms of Use ("Terms of Use" or "Terms") when he downloaded HI's app from the Apple App Store and proceeded to play HI's games for over a year where the Terms were continuously available to him during his gameplay.  By agreeing to HI's Terms, Plaintiff agreed to arbitration.  Plaintiff likewise waived his right to pursue relief through a class action.  Yet, despite agreeing to arbitrate any dispute with HI about its games, Plaintiff brings putative class claims in this court in direct violation of the plain Terms Plaintiff accepted through his download and use of the app.  Accordingly, the Court should order Plaintiff to arbitrate his dispute with HI and stay this action pending the outcome of the arbitration as required by the Federal Arbitration Act ("FAA").  9 U.S.C. § 2 *et seq.*

## II.      BACKGROUND

### A.      The Allegations in the Complaint

Plaintiff alleges that, since well over a year ago, he played video games using the mobile app "Huuuge Casino" (the "App") on his Apple iOS device, and that HI "owns and operates a video game development company."  Dkt. 1 ("Compl.") ¶¶ 1, 30.[1]  Players on HI's App spend virtual chips to play the games—those chips are received for free from Huuuge when they first play and as they continue to play, or they can be purchased by the player.  Compl. ¶ 3.  Plaintiff received numerous free chips initially and as he played games using the App.  *See id.* ¶¶ 30-31.  Plaintiff claims that during the course of his yearlong play, he spent

---

[1] Plaintiff's Complaint references "Huuuge Casino," which presumably refer to the app, "Slot Machines—Huuuge Casino" available to download on the Apple App Store (for iOS).  HI owns two subsidiaries that produce and distribute its apps—one of them, Huuuge Global Ltd. ("HGLTD"), which is incorporated in Cyprus, owns, produces, and distributes "Slot Machines—Huuuge Casino" to Apple for download on the Apple App Store.  Declaration of Anton Gauffin ("Gauffin Decl.") ¶ 2.  HGLTD is a wholly owned subsidiary of HI.  *Id.* ¶ 3.  As a holding company incorporated in Delaware, HI does not produce or distribute Huuuge Casino for iOS on the Apple App Store.  *Id.*

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 1
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

$9.99 to purchase additional chips.  *Id.* ¶¶ 3 (received free chips), ¶ 23 (received free chips), ¶¶ 30-31 (received free chips and decided to purchase more).  Plaintiff does ***not*** allege that the virtual chips can be redeemed for real world money, because they ***cannot*** be.  Gauffin Decl. ¶ 5.

Nor does Plaintiff allege that he did not receive free chips from the App (he did receive free chips), or that he could not continue to play the games for free without ever making a purchase (he could have).  *See id.* ¶ 4.  As a result of Plaintiff's decisions to purchase virtual chips to play the games for a longer period of time without waiting for his next allotment of free chips, Plaintiff alleges that HI should refund him $9.99 for violating Washington's gambling laws, along with damages for violations of the Consumer Protection Act, and for unjust enrichment.  Compl. ¶¶ 40-71.

**B.      Players of the App Accept HI's Terms of Use.**

Also conspicuously absent from the Complaint is that it omits *how* Plaintiff gained access to and played HI's free-to-play game.  In fact, to access HI's App, players using their Apple mobile device (using the Apple iOS operating system) agree to HI's Terms of Use both when downloading the App from the Apple App Store by swiping down and being able to read more about the terms of use, and while playing the game.  The screenshots embedded in the Complaint selectively reveal only portions of the App's game screen, including a screenshot showing a "First Purchase Special" message that allegedly appears during gameplay.  *See, e.g.*, *id.* ¶ 24.  But to play games using the App for the first time on iOS, a player must visit the page on the Apple App Store for the App to download and play it on their Apple mobile device (e.g., iPhone, iPad, or iPod Touch).  Gauffin Decl. ¶ 6.  The Apple App Store page contains a description for the App that states:

> Read our Terms of Use (www.huuugegames.com/terms-of-use), Privacy Policy (www.huuugeames.com/privacy-policy) and other important information.

*Id.* ¶¶ 6, 8.  Players then must decide to affirmatively tap the "GET" button on the Apple App Store page to download the App after having the opportunity to read the above notice and HI's

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 2
4834-5284-7207v.9 0111480-000001

1  Terms of Use.  *Id.* ¶ 7.  The Terms have appeared on the Apple App Store page for the App

2  since at least the time when Plaintiff started playing.  *Id.* ¶ 8.  A notice about the Terms appears

3  in the Apple App Store description page for the App with the specific admonition that a user

4  who intends to download HI's app should "Read our Terms of Use" and with a URL to the

5  Terms of Use.  *See* Screenshot No. 1 *infra*.  Plaintiff had to have seen this notice before he

6  pressed the "GET" button to download the App, and he certainly had the opportunity to see it:

7  **Screenshot No. 1**



23  Gauffin Decl. ¶ 8.

24       In addition, the Terms can be seen during every session of gameplay, because they are

25  available within the App through the main menu.  *Id.* ¶ 9.  The Terms are continuously

26  available, including when purchasing chips, and no matter whether the player is on an iPhone,

27  iPad, or any other device running Apple iOS.  *Id.* ¶ 10.  All Apple mobile devices require

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 3
4834-5284-7207v.9 0111480-000001

players to download the App through the Apple App Store, and use the same game interface with the Terms available to review.  *Id.*

HI's Terms appear clearly labeled under the main settings menu of the App for players to review.  *Id.* ¶ 11; *see* Screenshot No. 2 *infra*.  The notification appears in contrasting light black font on top of a light gray and white background.  Gauffin Decl. ¶ 11.  Once a player taps "Terms & Policy," a hyperlink to the Terms of Use appears in contrasting bright blue font on top of a light gray and white background.  *Id.*  Tapping the hyperlink opens a new page on the player's mobile device browser and automatically opens the complete version of HI's Terms.  *Id.*

**Screenshot No. 2**



*Id.* ¶ 12.

### C.      Plaintiff Accepted HI's Terms of Use by Using HI's App for Over a Year.

Plaintiff played HI's App for well over a year, since February 2017.  *See* Compl. ¶¶ 30-31.  During his entire time playing, a notification about HI's Terms and a link to the Terms appeared on the Apple App Store page, and Plaintiff had to download the App from the Apple App Store to initially play where he was put on notice to "Read our Terms of Use" and was provided a link to the Terms of Use.  *See* Screenshot No. 1 *supra*; Gauffin Decl. ¶¶ 6-8.  The Terms have also remained available to access and review from within the App during every

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 4
4834-5284-7207v.9 0111480-000001

session of gameplay throughout the period.  Gauffin Decl. ¶¶ 9-13.  Thus, Plaintiff was on notice of HI's Terms for the entire year he played games using HI's App and agreed to them by downloading and using the App.

> **D.**     **Plaintiff Is Bound by the Arbitration Agreement and Class Waiver Contained in HI's Terms.**

In agreeing to HI's Terms, Plaintiff agreed to resolve "any dispute" with HI exclusively through arbitration:

> EXCEPT AS SPECIFICALLY STATED HEREIN, ANY DISPUTE OR CLAIM BETWEEN YOU AND HUUUGE ARISING OUT OF, OR RELATING IN ANY WAY TO, THE TERMS, THE SERVICE OR YOUR USE OF THE SERVICE, OR ANY PRODUCTS OR SERVICES OFFERED OR DISTRIBUTED THROUGH THE SERVICE ("DISPUTES") SHALL BE RESOLVED EXCLUSIVELY BY FINAL, BINDING ARBITRATION.

*Id.* ¶ 14 & Ex. A (Terms in effect throughout 2017 and until May 25, 2018).  Since 2017 and throughout the entire period that Plaintiff played HI's games using the App, the Terms contained the same arbitration agreement.  *Id.* ¶ 15.  The Terms require arbitration to be administered by the American Arbitration Association.  *See id.* Ex. A.  Both HI and HGLTD are party to HI's Terms of Use.  *See id.* ("We welcome you to use the services of HUUUGE, Inc. and its affiliates ('HUUUGE, 'we', 'us', 'our').").[2]

Plaintiff also agreed to waive his right to participate in a class action:

> YOU AGREE THAT YOU MAY BRING CLAIMS AGAINST HUUUGE ONLY IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. IN ADDITION, YOU AGREE THAT DISPUTES SHALL BE ARBITRATED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION. THE ARBITRATOR DOES NOT HAVE THE POWER TO VARY THESE PROVISIONS.

*See id.*

---

[2] Only HI brings this motion.  HGLTD is not a party to this action.

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 5
4834-5284-7207v.9 0111480-000001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**E.      Plaintiff Seeks to Represent a Class Barred by the Arbitration Agreement.**

Plaintiff's suit ignores the plain benefit of the bargain he made by playing HI's games using the App.  Plaintiff is bound by HI's Terms, and HI's Terms unequivocally require Plaintiff arbitrate any disputes with HI and waive his right to class relief.  Plaintiff's Complaint brought in this matter, in this Court, as a putative class action, is an end run around these terms.  *See* Compl. ¶ 32 (purporting to represent a class of "[a]ll persons in the State of Washington who purchased and lost chips by wagering at Defendant's Huuuge Casino").  Plaintiff should not be permitted to circumvent or ignore the agreement he made with HI.  For these reasons, the Court should compel Plaintiff to arbitrate his claims on an individual basis in accordance with his agreement to do so.[3]

## III.      LEGAL STANDARD

"It is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability.'"  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).  "[T]he most minimal indication of the parties' intent to arbitrate must be given full effect."  *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1169 (W.D. Wash. 2013) (same), *aff'd*, 669 F. App'x 487 (9th Cir. 2016).  Accordingly the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution" that applies to all federal and state court proceedings.  *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).  Courts should "'rigorously enforce' arbitration agreements according to their terms" to further the FAA's strong policy favoring arbitration.  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted).  To do so, courts must "place arbitration provisions on the same footing as all other contractual provisions," and must "ensur[e] that private arbitrations are enforced."  *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013)

---

[3] HI reserves the right to present any merit-based and other grounds to dismiss the Complaint to the arbitrator, in accordance with the arbitration agreement, or to this Court if arbitration is not compelled.

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 6
4834-5284-7207v.9 0111480-000001

(alteration in original) (citation & internal quotation marks omitted); *accord Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1428 (2017).

The Ninth Circuit and courts in this district routinely enforce arbitration agreements. *See, e.g.*, *Mortensen*, 722 F.3d at 1159-60; *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937-38 (9th Cir. 2013); *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1160-61 (9th Cir. 2012); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175-76 (W.D. Wash. 2014) (compelling arbitration in a putative consumer class action and recognizing district court's limited discretion to disregard valid arbitration agreements under *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) and Ninth Circuit law); *Coppock v. Citigroup, Inc.*, 2013 WL 1192632, at *4-10 (W.D. Wash. Mar. 22, 2013) (enforcing arbitration agreement in putative consumer class action asserting TCPA and FDCPA claims); *see also Peters*, 2 F. Supp. 3d at 1169 (noting "there is a presumption of arbitrability" where a contract contains an arbitration clause).

The party seeking arbitration bears the initial burden of showing a valid arbitration agreement exists. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). The burden is on the party opposing arbitration to prove that arbitration is not required. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."). In determining whether parties agreed to arbitrate, "courts … apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Any doubts regarding the scope of an arbitration agreement should be resolved in favor of arbitrability. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

Plaintiff is bound to the Terms and arbitration agreement whether he read them or not. *See Wiseley v. Amazon.com., Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) ("[N]either California nor Washington law allows a party to escape contract obligations if it had actual or constructive

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 7
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

notice."); *Spam Arrest, LLC v. Replacements, Ltd.*, 2013 WL 4675919, at *8 (W.D. Wash. Aug. 29, 2013) ("[E]vidence that a party did not read the contract to which he manifested assent, is not relevant."); *Signavong v. Volt Mgmt. Corp.*, 2007 WL 1813845, at *3 (W.D. Wash. June 21, 2007) (plaintiff could not avoid arbitration agreement because he failed read it); *Chico v. Hilton Worldwide, Inc.*, 2014 WL 5088240, at *6 (C.D. Cal. Oct. 7, 2014) (plaintiff manifested assent to arbitration agreement regardless of whether he understood agreement).

## IV.   ARGUMENT

### A.   The FAA Requires Enforcement of Arbitration Agreements and Reflects the Strong Federal Policy Favoring Arbitration.

The FAA provides that an arbitration agreement within its scope shall be "valid, irrevocable, and enforceable," and permits a party to petition the Court for an order compelling arbitration in the manner for which the agreement provides.  9 U.S.C. §§ 2, 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (FAA reflects "congressional declaration of a liberal federal policy favoring arbitration agreements"); *Concepcion*, 563 U.S. at 339 (same).  The FAA limits the district court's role to determining (1) whether a valid arbitration agreement exists and (2) whether the agreement encompasses the disputes at issue. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  When both elements exist, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration."  *Chiron*, 207 F.3d at 1130 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)); *see also DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (FAA overrides any contrary state law).

In determining whether parties have agreed to submit to arbitration, courts "apply general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."  *JP Morgan Chase Bank, N.A. v. Jones*, 2016 WL 1182153, at *2 (W.D. Wash.

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 8
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Mar. 28, 2016) (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014)); *Nguyen*, 763 F.3d at 1175 (court applies "ordinary state-law principles that govern the formation of contracts" in determining whether valid arbitration agreement exists) (quoting *First Options*, 514 U.S. at 944).

## B.    Online Contracts Accepted by Conduct Are Valid and Enforceable.

"[G]eneral contract principles … apply to agreements made online," including browsewrap agreements. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (citing *Spam Arrest*, 2013 WL 4675919, at *8 n.10); *Kwan v. Clearwire Corp.*, 2012 WL 32380, at *9 (W.D. Wash. Jan. 3, 2012).[4]  "A valid contract requires an objective manifestation of mutual assent to its terms, which generally takes the form of offer and acceptance." *Am. Express Centurion Bank v. Stratman*, 172 Wn. App. 667, 673 (2012); *Nicosia*, 834 F.3d at 232. Washington and federal courts applying Washington law have held that assent to a contract can be manifested through conduct. *See Stratman*, 172 Wn. App. at 132 ("Acceptance of an offer may be made through conduct."); *Hertzke v. State Dep't of Ret. Sys.*, 104 Wn. App. 920, 933 (2001) ("A binding contract can exist where one party creates a written document affirmed by the other party's assent through actions."); *Johnson v. Whitman*, 1 Wn. App. 540, 545 (1969) ("Acts and conduct, as well as words, may show an offer and acceptance."); *Nicosia*, 834 F.3d at 232 ("Manifestation of assent to an online contract … can be accomplished by 'words or silence, action or inaction,' so long as the user 'intends to engage in the conduct and knows or

---

[4] For the purposes of the analysis of contract formation only, HI does not challenge the applicability of Washington law.  HI's Terms include a California choice-of-law provision, HI is a Delaware corporation, and Wilson is a Washington citizen.  However, Washington courts do not engage in a conflict of law analysis unless there is an *actual* conflict, rather than a "false conflict" where the results of the analysis would not be different when the law was applied. *See Shanghai Commercial Bank Ltd. v. Chang*, 189 Wn.2d 474, 480-81 (2017) (quoting *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 692 (2007)) (holding that "an actual conflict" must exist).  No conflict exists between Washington and California law regarding the formation of contracts, enforceability of arbitration provisions, and protections against unconscionable contracts. *See McKee v. Audible, Inc.*, 2017 WL 4685039, at *4-5 & n.2 (C.D. Cal. Jul. 17, 2017); *Wiseley*, 709 F. App'x at 864; *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1062-64 (S.D. Cal. 2015), *aff'd sub nom. Wiseley*, 709 F. App'x 862.

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 9
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

has reason to know that the other party may infer from his conduct that he assents.'") (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012)); *McKee*, 2017 WL 4685039, at *5 (applying Washington law, "[t]he occurrence of mutual assent ordinarily turns on whether the consumer had reasonable notice of a merchant's terms of services agreement") (citing *Nguyen*, 763 F.3d at 1173); *Kwan*, 2012 WL 32380, at *9 ("[T]he central issue of concern in Washington … is whether the consumer has notice of and access to the terms and conditions of the contract prior to the conduct which allegedly indicates his or his assent.").

### C.     The Design and Content of the App Screen Provided Sufficient Notice to Plaintiff of HI's Terms.

In this case, Plaintiff assented to the HI Terms through a hybrid agreement that combined elements of a "click through" and "browsewrap" agreement.

Under a traditional browsewrap agreement "a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen*, 763 F.3d at 1176. Browsewrap agreements differ from clickwrap agreements in that they do not require a user to expressly manifest assent (such as by clicking "I agree") to a website's terms and conditions. *Id.* Instead, the user assents to the terms and conditions through his or her use of the website. *Id.* "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Id.* (quoting *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) (finding a valid arbitration clause in a non-clickwrap agreement).

Pure browsewrap agreements *can*, in the right circumstances, be enforceable. *See, e.g.*, *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, at *4-5 (N.D. Cal. April 1, 2005) (finding browsewrap agreement enforceable). However, the analysis for browsewrap agreements is inapplicable here since HI's Terms were not presented solely as a browsewrap agreement. They required Plaintiff's action. HI's Terms constitute a hybrid agreement because

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 10
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

they require the Plaintiff to click to assent in proximity to a link to the terms without presenting

the terms in full (to download the App).  *See, e.g.*, *Meyer*, 868 F.3d at 77-80 (under California

law a sign-up button in proximity to a link to terms of service creates an enforceable

agreement); *DeVries v. Experian Info. Sols., Inc.*, 2017 WL 733096, at *5-7 (N.D. Cal. Feb. 24,

2017) (same).  Hybrid agreements, like HI's, are enforceable.  *See In re Facebook Biometric*

*Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165-67 (N.D. Cal. 2016) (noting hybrid-wrap

agreements are enforceable).

In the Ninth Circuit "the validity of the browsewrap agreement turns on whether the

website puts a reasonably prudent user on inquiry notice of the terms of the contract."  *Nguyen*

763 F.3d at 1177 (citing *Specht v. Netscape Commcn's Corp.*, 306 F.3d 17, 30-31 (2d Cir.

2002)); *see also* Black's Law Dictionary 1228 (10th ed. 2014) ("inquiry notice" defined as

"[n]otice attributed to a person when the information would lead an ordinarily prudent person

to investigate the matter further").  The determination of inquiry notice "depends on the design

and content of the website and the agreement's webpage."  *Nguyen*, 763 F.3d at 1177.

The "conspicuousness and placement" of the hyperlink to the HI Terms on the game

screen and "the website's general design" meet this criteria and establish that Plaintiff was put

inquiry notice of HI's Terms.  *Id.* at 1178; *see also Meyer*, 868 F.3d at 79 (so long as

hyperlinked text to terms of conditions is "reasonably conspicuous," even if "many users will

not bother reading the additional terms, that is the choice the user makes; the user is still

on inquiry notice").  In fact, in numerous similar cases, courts consistently enforce terms of use

based on providing a link to the terms on the purchasing page, regardless of the presence of

other links, images, or text on the page.  *See, e.g.*, *McKee*, 2017 WL 4685039, at *11 n.7

(upholding Amazon's terms of use with a hyperlink appearing on its checkout page, and

collecting cases enforcing Amazon's terms and similar online agreements, including *Fteja v.*

*Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing forum selection clause

based on disclosure below "Sign Up" button) and *Starke v. Gilt Groupe, Inc.*, 2014 WL

1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause, noting that plaintiff

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 11
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

"was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent")).

Consistent with well-established precedent, HI provided conspicuous notice to Plaintiff of the existence of its Terms.  Moreover, the design and content of the Apple App Store page for HI's App, and the App's play screen, are directly in line with cases where courts uphold the applicability of terms of use.

*First*, a notice to "Read our Terms of Use," and a URL to the Terms, appeared in the description for the App on the Apple App Store, both on the page where players must go to download the game.  Gauffin Decl. ¶¶ 6-8.  Plaintiff had to view the App Store page that contained the notice before clicking (tapping) "GET" to download the App.  *Id*. ¶ 7.  By affirmatively tapping "GET" to download the game, and advancing past the Apple App Store page to download the App to play, Plaintiff gained constructive notice of the Terms.  *See Himber v. Live Nation Worldwide, Inc*., 2018 WL 2304770, at *5 (E.D.N.Y. May 21, 2018) (advancing beyond the initial home page can constitute the type of action which "demonstrat[es] that [users] have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance"); *see also Snap-On Bus. Solutions Inc. v. O'Neil & Assocs., Inc*., 708 F. Supp. 2d 669, 682-83 (N.D. Ohio 2010) (finding constructive knowledge of a website's terms where the user had to "enter" a website from a page stating "[t]he use of and access to the information on this site is subject to the terms and conditions set out in our legal statement" near a link to the terms); Gauffin Decl. ¶¶ 6-8 (advising prospective users who might download the App, including Plaintiff, that they should "***Read our Terms of Use*** (www.huuugegames.com/terms-of-use) … ***and other important information***.") (emphasis added).

HI's Terms are similar to those analyzed in *Fteja*, where the court enforced a non-clickwrap agreement for users who signed up for Facebook on its website, and were notified in text elsewhere on the page that doing so was conditioned on Facebook's terms of use.  *Fteja*, 841 F. Supp. 2d at 839-40 (cited with approval by *Nguyen*, 763 F.3d at 1176-77).  The court

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 12
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

likened Facebook giving notice of its terms of use and directing users to a hyperlink, to a ticket stating "subject to conditions of contract" and directing the purchaser to additional terms on the back of the ticket. *Id*. at 839.  Both situations create valid enforceable agreements; the outcome should be no "different because Facebook's Terms of Use appear on another screen rather than another sheet of paper." *Id*.  HI's notice to "Read our Terms of Use" on the Apple App Store page for downloading the App alerts users of the Terms at the adjacent URL is even more conspicuous and directive than the notice in *Fjeta*.  *See* Gauffin Decl. ¶¶ 6-8.  The fact that the terms of use appear on another screen is the same as the paper ticket contract analogy described in *Fteja*.  And like cases enforcing Facebook's terms, here, Plaintiff affirmatively tapped to download the App while the Apple App Store page linked to HI's Terms.  *See* Gauffin Decl. ¶¶ 6-8.

Moreover, HI's placement of the terms below the "GET" button that Plaintiff was required to tap distinguish it from cases where courts refused to apply the terms of use.  In *Nguyen*, the court refused to enforce a browsewrap because the terms were "buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it." 763 F.3d at 1177.  But here, HI's Terms are obvious and placed mere lines below where Plaintiff had to click to assent to "GET" the app to play the App.  And unlike the terms in *Metter v. Uber Techs., Inc.*, 2017 WL 1374579 (N.D. Cal. Apr. 17, 2017), HI's Terms were never obscured on a hidden webpage that players would have no reason or interest in visiting. *Id.* at *3-4 (refusing to enforce a browsewrap where notice would have been obscured once user began entering credit card information), *appeal filed*, No. 17-16027 (9th Cir. 2017).

*Second*, HI's App *also* featured continuous notice and access to the Terms from within the App itself on the main settings menu screen.  Gauffin Decl. ¶¶ 11-12.  When players tap the main menu button at any time during gameplay, they immediately see "Terms & Policy" in the center of the screen without having to scroll or swipe down the screen.  *Id.* ¶ 12.

HI's notice regarding its Terms appeared with emphasis on the screen both on the Apple App Store and on the main menu screen within the game.  In both places, the Terms appeared

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 13
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

in contrasting black font on a light colored background.  *Id.* ¶¶ 8, 11-12.  On the Apple App

Store, the notice to "Read our Terms of Use" appears in the body of the App description

without distracting colors or links in close proximity.  *Id.* ¶ 8.  Within the game, the Terms

again appear in contrasting black font on a light colored background without distracting colors

or hyperlinks in close proximity.  *Id.* ¶¶ 11-12.  This compares favorably against browsewrap

agreements that courts have rejected.  For example, it compares favorably even against *Nicosia*,

where the Second Circuit emphasized the presence of "numerous" other links on Amazon's

checkout screen aside from the notification that users would agree to Amazon's conditions of

use in placing an order.  834 F.3d at 237.  "[T]here appear to be between fifteen and twenty-

five links on the Order Page, and various text is displayed in at least four font sizes and six

colors (blue, yellow, green, red, orange, and black), alongside multiple buttons and promotional

advertisements."  *Id.*  The Court found this "generally obscure[d]" the message that a user was

agreeing to Amazon's terms, adding that the presence of user's personal information and

purchase summary on the screen also was "sufficiently distracting so as to temper whatever

effect the notification has."[5]  *Id.*; *see also DeVries*, 2017 WL 733096, at *6 (distinguishing

pages containing "a multitude of hyperlinks or other distracting content" as providing

insufficient notice).  By contrast, the App's main settings menu features few links, all in simple

contrasting black font of a different type than the rest of the screen (a light gray background),

and all of which were clearly and consistently labeled (as "Terms" or "Terms of Use").

Gauffin Decl. ¶¶ 11-12.

Further, the App clearly identified its links as taking a user to the "Terms of Use."  This

fact also compares favorably against cases in which courts rejected links that were not clearly

named and thus provided insufficient notice.  *See, e.g.*, *Friedman v. Guthy-Renker LLC*, 2015

WL 857800, at *5 (C.D. Cal. Feb. 27, 2015) (noting "[t]he actual checkbox label," which

---

[5] *But see McKee*, 2017 WL 4685039, at *11 n.7 ("[T]he disclosure and hyperlink that appear on the Amazon checkout page are of the same nature as those upheld in courts across multiple districts, including those applying Washington law.") (collecting cases enforcing Amazon's terms and similar online agreements).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    stated, "Agree to terms," is "problematic" and could be confused with preceding language

2    referring to credit card authorization, not language referring to the website's Terms and

3    Conditions); *Mohamed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 731-32 (N.D. Ill. 2017)

4    (finding no notice where link to agreement "is situated at the bottom of the page in small font

5    under the vague heading, 'Contracts'").

6    **D.    Plaintiff Was Repeatedly Exposed to HI's Terms During His Year of Play.**

7            Plaintiff was not a one-time player of games on the App, such that there might be some

8    question about whether he was put on proper notice of the Terms.  Rather, Plaintiff was

9    indisputably on notice of HI's Terms since he played HI's App for more than a year.  Compl.

10   ¶¶ 30-31 ("In or around February 2017, Plaintiff Wilson began playing Huuuge Casino ….

11   Thereafter, Wilson continued playing …").  As a result, even after initially being told to "Read

12   our Terms of Use" prior to clicking (tapping) "GET" the app, Plaintiff came face-to-face with

13   HI's App on multiple occasions, where the Terms were continuously available to him on the

14   main settings menu during gameplay.  A party cannot viably claim that it lacked notice of terms

15   and conditions when it was accessing a webpage and receiving notice of the terms on multiple

16   occasions.  *See Cairo*, 2005 WL 756610, at *5 (imputing knowledge of restrictions on website

17   use to repeated user of website); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401

18   (2d Cir. 2004) (Verio's arguments concerning notice "might have been persuasive" if its access

19   of Register was "sporadic and infrequent," but Verio's access instead occurred "daily" and

20   involved "submitting numerous queries").  Because Plaintiff played the App on multiple

21   occasions for over a year, he was undoubtedly on inquiry notice of the Terms that were

22   available to access from within the App during that entire period.  *See Register.com*, 356 F.3d

23   at 402 ("Verio visited Register's computers daily to access WHOIS data and each day saw the

24   terms of Register's offer," and restrictions on use of site).

25           Whether Plaintiff actually read HI's Terms is irrelevant since he had notice of their

26   existence.  *See Handy v. Logmein, Inc.*, 2016 WL 4062102, at *12 (E.D. Cal. Jan. 27, 2016)

27   (failure of consumer to read online terms and conditions before accepting them "is insufficient

to avoid the contract"); *Nguyen*, 763 F.3d at 1179 ("[F]ailure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract …."). Plaintiff as a reasonably prudent user had constructive knowledge of the Terms due to his long-term use and "[t]he transactional context of the parties' dealings." *Meyer*, 868 F.3d at 80 (user accessed the service with "the intention of entering a forward-looking relationship with Uber," such that the continuing relationship between the user and Uber "would require some terms and conditions").

Notably, unlike here, cases where terms were not enforced relied on one or two transactions by the plaintiff. *See, e.g.*, *Nguyen,* 763 F.3d at 1173-74 (plaintiff made a single, one time online purchase from Barnes and Noble); *Nicosia*, 834 F.3d at 226 (plaintiff made just two purchases of the product on Amazon.com); *Metter*, 2017 WL 1374579, at *1 (plaintiff engaged in a single transaction with Uber); *Friedman*, 2015 WL 857800, at *1 (plaintiffs who made one-time purchases of hair-care products).

Finally, Plaintiff's interactions with the App demonstrate that he is a sophisticated app user who understands how to locate and access information and who out of reasonable prudence would understand that his use of the app was subject to the Terms linked within the Apple App Store and within the App itself. *See Fteja*, 841 F. Supp. 2d at 839-40 (noting that a person familiar with using a website "would understand that the hyperlinked phrase 'Terms of Use' is really a sign that says 'Click Here for Terms of Use'"); *see also Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *5 (S.D.N.Y. Nov. 20, 2017) (observing that plaintiff was a relatively sophisticated internet and smartphone user who knew how to sign up for Facebook and make internet purchases and elected not to read the terms of use when browsing the website), *report and recommendation adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018), *appeal filed*, No. 18-607 (2d Cir. 2018).

In summary, by telling Plaintiff to "Read our Terms of Use" before downloading the game, making a link to the Terms of Use continuously available from within the App itself, referencing the Terms on screens that did not show an abundance of distracting links or colors

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 16
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

in close proximity to the terms, and clearly and consistently labeling the Terms as "Terms of Use," HI satisfied the requirements that its "design and content" needed put a user on inquiry notice of the existence of its Terms. *See Nguyen*, 763 F.3d at 1177-79. Reasonably prudent users are on notice of HI's Terms. As such, Plaintiff is bound by them.

### E.    Plaintiff's Claim Falls Within the Scope of the Arbitration Agreement.

Plaintiff must arbitrate any dispute he has with HI. As the Supreme Court has repeatedly expressed, the FAA reflects "a national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Preston*, 552 U.S. at 349. Accordingly, there is a presumption that where an agreement contains an arbitration clause, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)) (alteration in original). "[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (quoting *United Steelworkers*, 363 U.S. at 584-85) "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016); *accord Tuminello v. Richards*, 2012 WL 750305, at *2 (W.D. Wash. Mar. 8, 2012) ("[T]he FAA divests courts of their discretion and requires courts to resolve any doubts in favor of compelling arbitration."), *aff'd*, 504 F. App'x 557 (9th Cir. 2013).

All of Plaintiff's claims arise out of or relate in some way to the Service provided by HI (or its subsidiary HGLTD) since they arise from Plaintiff playing (and purchasing chips to play for an extended period of time) HI's games using the App. Compl. ¶¶ 30-31, 40-71. As a result, Plaintiff's claims are within the scope of the arbitration provision in HI's Terms. Gauffin Decl. Ex. A (covering "any dispute or claim … arising out of, or relating in any way to, the terms, the service or your use of the service, or any products or services offered or distributed through the service"). The "service" includes "mobile and online services,

including but not limited to HUUUGE game applications (the 'Game(s)') … (the Games, the Site and other products, mobile applications, services and websites provided by us collectively, the 'Service.')"  *Id.*

Such "any dispute" or "any claim" language is "routinely used … to secure the broadest possible arbitration coverage." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993); *see also Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.*, 820 F.2d 1531, 1534-35 (9th Cir. 1987) ("An agreement to arbitrate 'any dispute' without strong limiting or excepting language immediately following it logically includes not only the dispute, but the consequences naturally flowing from it[.]"); *Chiron*, 207 F.3d at 1131 (clause requiring arbitration of "[a]ny dispute, controversy or claim arising out of or relating to" parties' agreement is "broad and far reaching"); *Smith v. Vmware, Inc.*, 2016 WL 54120, at *6 (N.D. Cal. Jan. 5, 2016) ("any dispute" language "makes the [arbitration] clause very broad and inclusive"); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013) ("Defendants' arbitration agreements all contain the broad 'related to' or 'relating to' language, and the Court accordingly reads the clauses broadly."); *Ekin*, 84 F. Supp. 3d at 1178 (broadly construing and enforcing arbitration agreement encompassing "any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com"); *Coppock*, 2013 WL 1192632, at *5 (enforcing arbitration clause covering "[a]ll [c]laims relating to your account, a prior related account, or our relationship are subject to arbitration … , no matter what legal theory they are based on or what remedy … they seek").

Plaintiff's claims fall squarely within HI's Terms, but the Terms would be enforceable even if they did not. *Simula*, 175 F.3d at 721 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)) ("[F]actual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.").  All of Plaintiff's causes of action and factual allegations claim the same injury and seek the same remedy—that the App is somehow illegal under

Washington law and that Plaintiff should be entitled to recover money spent on virtual currency to play games on the App.  Compl. ¶¶ 40-71.  The Court "must 'rigorously enforce'" the agreement "according to [its] terms" and apply HI's mandatory arbitration provision to Plaintiff's claims.  *Italian Colors Rest.*, 570 U.S. at 233.

**F.        The Arbitration Agreement and Class Action Waiver Are Enforceable.**

Not only is Plaintiff subject to HI's arbitration provision, but under HI's Terms, he has also waived his right to include his disputes in a class action.  Plaintiff agreed that he would only bring claims in his "INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING."  Gauffin Decl. Ex. A.  Plaintiff has no cognizable basis to avoid the arbitration and class waiver provisions contained in HI's Terms.

First, Plaintiff cannot avoid the arbitration agreement simply because he might prefer to pursue class claims.  Since *Concepcion*, the U.S. Supreme Court has consistently held that arbitration agreements containing class action waivers must be enforced according to their terms.  *See*, *e.g.*, *DIRECTV*, 136 S. Ct. at 468 ("The [FAA] is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act."); *Italian Colors Rest.*, 570 U.S. at 232, 237-38 (same); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1627-28 (2018) (class action waivers in employment arbitration agreements are enforceable under FAA); *accord Kilgore v. Keybank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (any argument that a "ban on class arbitration is unconscionable … is now expressly foreclosed by *Concepcion*"); *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159-60 (9th Cir. 2012) (*Concepcion* "forecloses" argument that class action waivers are unconscionable under Washington law); *Velazquez v. Sears, Roebuck & Co.*, 2013 WL 4525581, at *6 (S.D. Cal. Aug. 26, 2013) (same as to California law); *Coppock*, 2013 WL 1192632, at *8 n.2 ("Under *Concepcion*, the Court cannot consider Washington's policy on unconscionability of class-action waivers—'fundamental' or not, … since the FAA preempts that policy and precludes a court from taking it into account in conducting the unconscionability analysis.").

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 19
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Second, Plaintiff has no basis to claim the arbitration agreement is procedurally unconscionable. Each time Plaintiff played HI's App and thereby agreed to the Terms, he had the choice *not* to continue playing the game and thus doing business with HI. *See Zuver v. Airtouch Commc'ns*, 153 Wn.2d 293, 304-05 (2004) (adhesion is insufficient to support a finding of procedural unconscionability under Washington law). The arbitration agreement was prominently featured in all capital letters within the Terms under the governing law and resolution of disputes section, with "Binding Arbitration" underlined, and explained in plain language. Gauffin Decl. Ex. A; *see Fagerstrom*, 141 F. Supp. 3d at 1069-70 (enforcing terms of use where "[t]he text of the Arbitration Agreement is the same size and font as the rest of the [terms]," plaintiff was not under time pressure to accept, and the agreement was written in plain language); *see also Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 914 (2015) (any "obligation to highlight the arbitration clause of [the] contract … would be preempted by the FAA"). Plaintiff cannot believably claim anyone forced him to download HI's App on his Apple iOS device, or to play HI's games, or that he was caught unaware when he chose to continue playing the game for over a year and thus to affirmatively accept the Terms that were readily available within the App at all times during game play.

Third, Plaintiff cannot claim the arbitration agreement is substantively unconscionable, i.e., that it is so harsh or one-sided that it is "[s]hocking to the conscience." *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *5 (W.D. Wash. 2007) (quoting *Nelson v. McGoldrick*, 127 Wn.2d 124, 131 (1995)). Again, it is settled law that the class action waiver provision in the arbitration agreement cannot be considered unconscionable. *Concepcion*, 563 U.S. at 352. The arbitration in this case would not be prohibitively expensive, because the Terms select American Arbitration Association ("AAA") rules and does not contain any cost-prohibitive provisions. *See* Gauffin Decl. Ex. A; *Green Tree Fin.*, 531 U.S. at 90-91 ("The 'risk' that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."); *Signavong*, 2007 WL 1813845, at *4 (under Washington law, even

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 20
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

a provision requiring paying the prevailing party's attorneys' fees would not be so one-sided as to shock the conscience).

Thus, Plaintiff's arbitration agreement is squarely within the type of agreements that are reliably found to be fully enforceable, as several courts have held and the FAA directs. Because Plaintiff has no grounds to avoid his agreement or the FAA's mandate, the Court should compel him to individual arbitration.

### G.   The Arbitrator Must Resolve Any Further Challenges to the Arbitration Agreement.

Because the arbitration agreement exists, this Court's analysis should end, and any further issues should be referred to an arbitrator—including any contention that the arbitration clauses are unenforceable or that this dispute lies outside the scope of the arbitration agreement. *See Rent-ACenter, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 & n.1 (2010).  It is well-established that parties may delegate "gateway" questions of arbitrability to an arbitrator.  "A delegation clause is enforceable when it manifests a clear and unmistakable agreement to arbitrate arbitrability, and is not invalid as a matter of contract law."  *McLellan v. Fitbit, Inc.*, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)).

Here, the arbitration agreement requires arbitration in accordance with the AAA rules, which expressly provide that questions of jurisdiction and arbitrability are to be decided by the arbitrator.  *See* Gauffin Decl. Ex. A; AAA Rule R-7(a), https://www.adr.org/sites/default/files/CommercialRules_Web.pdf ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.").  The Ninth Circuit has held that incorporating arbitration rules which delegate authority to the arbitrator to determine arbitrability constitutes "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Brennan*, 796 F.3d at 1130 (citation & internal quotation marks omitted).  Consequently, because the arbitration agreement selects AAA rules and thus

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 21
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

delegates threshold questions of arbitrability to an arbitrator, this Court should refer any potential defenses to the enforcement of the arbitration agreement to the arbitrator.

### H.     The Court Should Compel Arbitration and Stay This Action.

When a party seeks to compel arbitration and stay litigation under § 3 of the FAA and the Court determines the arbitration provision is applicable, the Court has no discretion; it "shall" stay the action.  9 U.S.C. § 3; *see Dean Witter*, 470 U.S. at 218 (FAA mandates that the court "*shall* direct the parties to proceed to arbitration" and "leaves no place for the exercise of discretion"); *Concepcion*, 563 U.S. at 344; *see also Coppock*, 2013 WL 1192632, at *10 (granting motion to compel arbitration and staying the case pending arbitration).  Congress intended this provision to effectuate the FAA's policy favoring prompt arbitration without the delay of an intervening appeal.  *See* 9 U.S.C. § 16 (allowing a one-way appellate right, i.e., the party seeking to compel arbitration can appeal if a district court denies the motion, but a party opposing arbitration cannot appeal if the court grants the motion).  Because HI's Terms apply and there is a valid arbitration and class waiver provision, the Court should compel arbitration of Plaintiff's claims and stay further proceedings in this case.

### V.     CONCLUSION

Plaintiff agreed to arbitrate his dispute with HI on an individual basis by downloading the App and playing HI's games while on notice of HI's Terms.  Plaintiff cannot avoid his agreement now, and the FAA commands that his claims be referred to individual arbitration, while staying all proceedings in this Court.  9 U.S.C. § 3.  Accordingly, HI respectfully requests that the Court (1) compel Plaintiff to arbitrate his dispute with HI on an individual basis, and (2) stay this action pending resolution of the arbitration proceeding.

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 22
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1     DATED this 2nd day of July, 2018.

2                                                   Respectfully submitted,

3                                                   DAVIS WRIGHT TREMAINE LLP

4

5                                                   By s/ *Jaime Drozd Allen*
                                                       Jaime Drozd Allen, WSBA #35742
6                                                      Stuart R. Dunwoody, WSBA #13948
                                                       Cyrus E. Ansari, WSBA #52966
7                                                      1201 Third Avenue, Suite 2200
                                                       Seattle, Washington  98101-3045
8                                                      Tel: (206) 622-3150  Fax: (206) 757-7700
                                                       Email: jaimeallen@dwt.com
9                                                      Email: stuartdunwoody@dwt.com
                                                       Email: cyrusansari@dwt.com

10                                                  *Attorneys for Huuuge, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 23
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1
2
**CERTIFICATE OF SERVICE**

3       I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

4  Court using the CM/ECF system which will send notification of such filing to all counsel of

5  record.

6       DATED this 2nd day of July, 2018.

7
8
*s/ Jaime Drozd Allen*
Jaime Drozd Allen, WSBA #35742

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

MOTION TO COMPEL ARBITRATION AND STAY ACTION
(3:18-cv-05276-RBL) - 24
4834-5284-7207v.9 0111480-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax