UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> HUUUGE, Inc., a Delaware corporation, <br><br> Defendant. | CASE NO. 3:18-cv-05276-RBL <br><br> ORDER GRANTING DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING APPEAL <br><br> DKT. #49 |

## INTRODUCTION

THIS MATTER is before the Court on Defendant's, Huuuge, Inc., Motion to Stay Proceedings Pending Appeal of this Court's order Denying Defendants' Motion to Compel Arbitration. Dkt. #49. The underlying dispute is a class action to recover money lost playing electronic gambling games available through a mobile app. The Court denied Huuuge's previous motion because the location of the URL to the app's Terms of Use was not sufficiently conspicuous to provide users with constructive notice that they were bound by those Terms. Dkt. #43.

Huuuge appealed and filed this Motion, arguing that a stay should be granted because the appeal raises serious legal questions such as whether repeatedly playing a game or using an app

through a mobile device can give rise to constructive notice. Dkt. #49; Dkt. #56. Huuuge also argues that the balance of equities favor a stay because of the risk of losing the advantages of arbitration, speed and economy. Dkt. #49. Finally, Huuuge argues it would suffer irreparable harm if it must litigate this potential class action in the lower court while arguing for arbitration before the Ninth Circuit. *Id*. Wilson responds that a stay should not be granted because the questions raised by Huuuge are not novel, do not speak to the merits of the case, and boil down to disagreement over the application of settled browsewrap precedent. Dkt. #54. Finally, Wilson claims he would suffer significantly by delaying his day in court. *Id*. For reasons stated herein, this court GRANTS the motion.

**BACKGROUND**

This proposed class action alleges that Huuuge's online games constitute illegal gambling in violation of RCW §4.24.070. Dkt. #1, at 11-13. Users are given free 'virtual' chips when they first access Huuuge's apps but must subsequently purchase additional chips to continue playing. *Id.*, at 6-7. Wilson seeks to establish a class action to recover money lost by users from playing Huuuge's games. *Id*. A few months into the case, Huuuge moved to compel arbitration. Dkt. #31.

Huuuge's motion argued that users were put on inquiry notice and agreed to the app's Terms, which contain an arbitration clause, both when they originally download the app and when actually playing it. Dkt. # 43, at 1. Users may download the app through the Apple App Store by clicking a blue "GET" button. *Id.*, at 2. At the bottom of the app page, a user can click on an icon that says "more," and after scrolling through several screens worth of text, a user will encounter the statement "Read our Terms of Use." *Id*. This statement is followed by a URL that a user can copy and paste into their web browser to access the Terms. *Id*. Once the game is downloaded, a user can access the Terms by vising the settings menu via a button in the upper

corner of the screen. *Id.* The Court denied Huuuge's Motion to Compel Arbitration because the inconspicuous nature and location of the Terms within the games did not meet the standard required for actual or constructive notice, and so Wilson never agreed to be bound by the Terms. *Id*. Huuuge appealed to the Ninth Circuit and filed this Motion to stay proceedings.

**DISCUSSION**

**1. Legal Standard for Issuing a Stay**

The Federal Arbitration Act permits interlocutory appeals from the denial of a motion to compel arbitration. 9 U.S.C.A. §16. A litigant who asks for a stay of proceedings where the issue is subject to arbitration is entitled to an immediate appeal from denial of that motion to stay, even if they are not be eligible for a stay. *Arthur Andersen LLP v. Wayne Carlisle*, 556 U.S. 624, 627 (2009). Nevertheless, an appeal from a district court's order denying a motion to compel arbitration does not trigger an automatic stay pending the appeal. *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1412 (9th Cir. 1990). Whether to issue a stay is an exercise of judicial discretion *Nken v. Holder*, 556 U.S. 418, 433 (2009). In the Ninth Circuit, this is the case even where the underlying issue is whether the district court properly denied a motion to compel arbitration. *Britton,* 916 F.2d 1405.[1]

Courts consider four factors before issuing a stay: "(1) 'substantial case for relief on the merits' on appeal; (2) probable irreparable harm if no stay is granted; (3) the balance of harm tips in favor of the moving party; and (4) a stay is in the public interest." *Leiva-Perez v. Eric H.*

---

[1] There is a circuit split regarding whether denials of motions to compel arbitration automatically warrant a stay if the losing party appeals. *McLeod v. General Mills*, 2015 WL 7428548 (2015). Five circuits ruled in favor of *McLeod's* contention that a stay is mandatory, while three circuits have held the opposite. The Eighth Circuit has yet to weigh in. The Seventh Circuit explained that "whether the litigation may go forward in the district court is precisely what the court of appeals must decide." *Bradford-Scott Data Corporation, Inc., v. Physician Computer Network, Inc.,* 128 F.3d 504, 506 (1997). The Supreme Court has also observed that "[a] district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982). However, the Ninth Circuit has held that a stay is not automatic. *Britton*, 916 F.2d 1405.

1 | *Holder*, 640 F.3d 962, 964 (9th Cir. 2011). Although "[t]he first two factors… are the most

2 | critical," *Nken*, 557 U.S. at 434, the Ninth Circuit balances the relative equities of a substantial

3 | case on the merits with the balance of hardships that may affect the parties. *Rajagopalan v.

4 | Noteworld, LLC*, 2012 WL 2115482, at *5 (W.D. Wash. Jun. 11, 2012) (citing *Leiva-Perez*, 640

5 | F.3d at 971). In addition, "[t]he party requesting a stay bears the burden [to]… justify the stay."

6 | *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.,* 2016 WL 9226389, at *1 (2016).

   **2. Serious Legal Questions**

   Huuuge raises three potential serious legal questions in its Motion: (1) whether questioning the formation of a browsewrap agreement presents a serious legal question, (2) whether repeatedly playing a game or using an app while a notice is present on the game screen creates constructive notice, and (3) whether affirmatively downloading a game from the app store where the Terms are posted establishes constructive notice. Dkt. #49 at 5. Huuuge argues that whether a contract is valid is a serious legal question, even if the question seems clear to the district court. *Id*. Wilson argues that Huuuge does not meet the standard required for a serious legal question because the issue of contract formation is not novel and the Ninth Circuit already established clear and consistent precedent in interpreting browsewrap agreements. Dkt. #54; *see also Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1176-79 (9th Cir. 2014).

   "To justify a stay, a petitioner must show, at minimum, that [they have] a substantial case for relief on the merits." *Leiva-Perez*, 640 F.3d at 964. However, the moving party does not need to show they are more likely than not to win on the merits as long as the issue on appeal raises a "serious" legal question and the remaining factors favor a stay. *Id*.; *see also Smith v. Legal Helpers Debt Resolution, LLC,* 2012 WL 12863172, at *2 (W.D. Wash. Apr. 24, 2012). The Ninth Circuit has not defined exactly what makes a legal question "serious," but courts have

found that a question is serious when it raises an issue of first impression within the Ninth Circuit or involves a split in legal authority. *Vesta Corporation v. Amdocs Management Limited*, 2016 WL 10843668, at *2 (2016); *see also Britton,* 916 F.2d at 1413.

Issues relating to the formation of a contract containing an arbitration clause can present serious legal questions. In *Sample v. Brookdale Senior Living Communities, Inc.*, for example, the court found that the defendants raised a serious legal question regarding whether an employee's acceptance of employment waives the signature requirement for an arbitration agreement to be formed. No. C11-58844, 2012 WL 195175, at *2 (W.D. Wash. Jan 23, 2012); *see also Smith v. Legal Helpers*, No. 11-5054, 2012 WL 12863172, at *2 (W.D. Wash. Apr. 24, 2012) (granting the motion to stay but observing, without explanation, that the "substantial case for relief" factor only "somewhat favor[ed] a stay"); *Rajagopalan v. Noteworld, LLC*, No. C11-5574, 2012 WL 2115482, at *3 (W.D. Wash. Jun. 11, 2012) (granting motion to stay and finding that the defendant had raised substantial questions regarding unconscionability).

Even where there is substantial case law addressing the issues raised on appeal, courts may find the serious question factor satisfied if the relevant authority does not squarely address the specific issue. For example, in *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, the court observed that, although it was well-established that it was the role of the court to assess contract formation and not the arbitrator, most cases addressing the issue involved challenges to contract execution. No. 14-cv-02857, 2015 WL 674962, at *3 (N.D. Cal. Feb. 17, 2015). Because the defendant had challenged contract formation on other grounds and there was no binding authority "squarely address[ing]" the issue, the court found the serious question factor satisfied. *Id*., at 3; *see also Lowden v. T-Mobile USA, Inc*, No. C05-1482P, 2006 WL 1896678, at *2 (W.D. Wash. July 10,

2006) (finding a serious legal question existed because "Washington Law is not clear on whether class action restrictions in consumer arbitration agreements are enforceable").

Here, Huuuge raises a somewhat novel question of whether the current standard for measuring assent to terms via a mobile app and the repetitive use of that app gives rise to actual or constructive notice. Dkt. #49; Dkt. #56. Even though this court stands by its prior decision that the design of the app and the location of the URL in place by Huuuge fall short of the well-established standard from *Nguyen*, 763 F.3d at 1177, like in *Kum Tat*, there is no clear precedent by the Ninth Circuit or the Supreme Court squarely addressing the issue of repetitive use of the app. Dkt. #43; *see* 2015 WL 674962, at *3. Because there is no precedent squarely on point, Huuuge meets the serious legal question standard, albeit minimally.

3. **Irreparable Harm to Applicant**

Huuuge argues it would suffer irreparable harm because continued litigation will deprive it of the contractual right to arbitrate claims on an individual basis. Dkt. #49, at 5. Huuuge asserts that this defeats the cost-saving purpose of arbitration by increasing litigation expenses. *Id*. Wilson responds that the financial burdens would also be incurred in private arbitration, and are not the type of irreparable harm the court requires to satisfy this part of the test. Dkt. #54.

For a moving party to be considered "irreparably injured" for the purposes of a motion to stay, that injury must be "categorically irreparable." *Nken,* 556 U.S. at 434. "Simply showing some possibility of irreparable injury is not sufficient." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, No. 16-cv-00495, 2016 WL 9226389, at *3 (D. Or. Oct. 5, 2016) (citing *Nken*, 556 U.S. at 434). Nevertheless, "a stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 437. A moving party must show that irreparable harm is probable

without a stay, otherwise "a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965.

The impending cost of litigation is not considered an irreparable harm. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, No. 16-cv-00495, 2016 WL 9226389 (D. Or. Oct. 5, 2016). In *Guifu Li v. A Perfect Franchise, Inc.,* the court found that the moving party would not be irreparably harmed because additional expenses of proceeding through discovery do not constitute irreparable harm. No. 5:10-cv-001189, 2011 WL 2293221, at *5 (N.D. Cal. June 8, 2011) (where the contract involved a failure to pay independent contractors and then a concern that records were missing due to a new paperless policy). However, the court in *Lowden* found that litigation expenses constituted significant hardship because the cost-limiting purpose of arbitration would be negated if the court's order was reversed on appeal. 2006 WL 1896678, at *2. The court in *Sample* echoed these sentiments. 2012 WL 195175, at *2.

Here, although the underlying contract is different from *Guifu,* Huuuge would likely not incur additional expenses through discovery. This Court does not find *Lowden* and *Sample* persuasive as applied to this case because the parties here have entered into an informal agreement to stay discovery pending the appeal before the Ninth Circuit. Dkt. #55.

Nevertheless, Huuuge would suffer irreparable harm because of the risk of arbitration becoming moot and the possibility of having to litigate a class action. Courts have determined that the defendants face a particular risk of irreparable harm when they have appealed an order refusing to compel arbitration of a potential class action. *See Rajagopalan,* 2012 WL 2115482, at *3; *Smith*, 2012 WL 12863172, at *2. If there is a valid arbitration agreement, "one party is deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes." *Alascom, Inc., v. ITT N. Elec., Inc.,* 727 F.2d 1419, 1423 (9th Cir. 1984.)

Although the Court did not find that a valid browsewrap agreement exists here, Huuuge would still suffer irreparable harm similar to the movant in *Rajagopalan* and *Smith* if the Ninth Circuit disagrees and Huuuge is forced to litigate a class action unnecessarily.

Furthermore, if the court of appeals does not reverse, there is a chance the parties will settle their dispute shortly after, making any litigation that took place at the trial level a waste of resources. Therefore, this factor weighs in favor of Huuuge.

**4. Balance of Harms in Favor of Applicant**

Huuuge asserts that if it is successful on appeal, but the proceedings in district court are not stayed, arbitration will become moot and rendered meaningless. Dkt. #49; *see generally Leiva-Perez*, 640 F.3d 962. It further argues that Wilson would not suffer comparable harm if the court issues a stay because no discovery has taken place, and no class action has been certified. Dkt. #49 at 14. Wilson responds that he is suffering irreparable harm by delaying their day in court, and fear this will lead to evidence decaying and "witnesses' memories" fading. Dkt. #54 at 16. Wilson is also concerned that Huuuge, which is largely run internationally, might scale down domestic operations or be purchased by another corporation less willing to participate in these proceedings. *Id*.

In weighing these factors, courts apply a "sliding scale" approach whereby the factors are balanced "so that a stronger showing of one ... may offset a weaker showing of another." *Leiva–Perez,* 640 F.3d at 964. Courts balance the harm to the parties and have deemed that it would be redundant for both actions to proceed simultaneously. *Sample*, 2012 WL 195175, at *3; *see also Blinco v. Green Tree Servicing, LLC,* 366 F.3d 1249, 1251 (2004) (citing *Bradford- Scott Data Corp.,* 128 F.3d at 505) (The issue of continued litigation in the district court is "not collateral to the question presented by an appeal under 16(a)(1)(A); it is the mirror image of the question

presented on appeal."). In *Rajagopala*, *Sample*, and *Smith*, the courts found that monetary damages sought by the plaintiffs were not as significant as the harm that defendants would suffer by having to proceed with litigation while their appeal was pending.

Here, the equities tilt in favor of Huuuge because the risk that arbitration will become moot is significantly greater compared to the monetary damages Wilson may suffer. The court does not find Wilson's argument regarding the decay of evidence or the possibility that another organization would not cooperate persuasive. Furthermore, Wilson does not have much to lose, since he is simply seeking restitution for the money lost, whereas Huuuge risks having to defend a class action versus arguing individual claims in arbitration. This factor therefore weighs in favor of Huuuge.

**5. Public Interest**

Huuuge argues that a stay would serve judicial economy and public interest because to continue litigation in both courts would risk redundancy or inconsistent actions. Dkt. #49 at 15. Wilson states this type of illegal online gambling continues to go unregulated thereby increasing gambling addiction and significantly impacting the citizens of Washington State. Dkt. #54 at 16. Courts have observed that issuing a stay avoids wasting judicial resources and is in keeping with the federal policy favoring arbitration. *See, e.g*, *AG Edward & Sons, Inc., v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992); *Sample*, 2012 WL 195175, at *2 (2012); *Lowden*, 2006 WL 1896678, at *2. These rationales apply equally here. Although the Court determined that no arbitration agreement was formed in this case, it is at least possible that Huuuge's appeal could still result in a reversal that would put arbitration back on the table. The public interest factor thus favors Huuuge.

# CONCLUSION

For these reasons, Huuuge's Motion to Stay Proceedings Pending Appeal is GRANTED. Dkt. #49.

IT IS SO ORDERED.

Dated this 1st day of March, 2019.

Ronald B. Leighton
United States District Judge