Hon. Ronald B. Leighton

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>HUUUGE, INC., a Delaware corporation.<br><br>*Defendant*. | No. 18-cv-05276-RBL<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF TEMPORARY RESTRAINING ORDER**<br><br>**ORAL ARGUMENT REQUESTED (VIA TELEPHONE)**<br><br>NOTE ON MOTION CALENDAR: April 2, 2020 |

PL'S REPLY ISO TRO
No. 18-cv-05276-RBL- i

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**TABLE OF CONTENTS**

**INTRODUCTION**........................................................................................................... 1

**ARGUMENT**................................................................................................................. 2

    I.    **WILSON IS LIKELY TO SUCCEED ON THE MERITS BECAUSE HUUUGE'S CONDUCT IS COERCIVE, MISLEADING, AND CONFUSING.**................................................................................................ 3

    II.   **PUTATIVE CLASS MEMBERS ARE LIKELY TO SUFFER IRREPARABLE HARM ABSENT A TRO.** ............................................... 6

    III.  **THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR PLAINTIFF.**....................................................................................... 7

**CONCLUSION** ............................................................................................................. 8

PL'S REPLY ISO TRO
No. 18-cv-05276-RBL- ii

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
　　447 U.S. 557 (1980) ................................................................................................ 8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
　　559 U.S. 662 (2010) ................................................................................................ 8

**United States Circuit Court of Appeals Cases**

*Coyote Publ'g, Inc. v. Miller*,
　　598 F.3d 592 (9th Cir. 2010) ................................................................................... 7

*HomeAway.com, Inc. v. City of Santa Monica*,
　　918 F.3d 676 (9th Cir. 2019) ................................................................................... 8

*Kater v. Churchill Downs Inc.*,
　　886 F.3d 784 (9th Cir. 2018) ................................................................................... 8

**United States District Court Cases**

*Adtrader, Inc. v. Google LLC*,
　　No. 17-cv-07082, 2018 WL 1876950 (N.D. Cal. Apr. 19, 2018) ............................ 4

*Kater v. Churchill Downs Inc.*,
　　No. 15-cv-0612, 2019 WL 6130844 (W.D. Wash. Nov. 11, 2019) ................ *passim*

PL'S REPLY ISO TRO
No. 18-cv-05276-RBL-

**TOUSLEY BRAIN STEPHENS, PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## INTRODUCTION

Taking an outdated page from the *Big Fish* playbook, Huuuge argues that its attempt to foist its Revised Terms of Use upon its userbase is not coercive or misleading because the pop-up notification it used contained language nearly identical to a pop-up this Court allowed the defendants in *Big Fish* to show to that userbase. But mimicking the tactics and language of defendants in other lawsuits isn't all that helpful when operating under completely different circumstances. While this Court may have approved of a snail-mail-only "opt-out" procedure in a world before COVID-19, we're now living in a world where Washington residents are barred from leaving their homes for non-essential purposes and are being warned by their Secretary of State not to lick ballot envelopes. It is simply not true to say, as Huuuge does in its Opposition, Dkt. 77, that "[a] customer's options to obtain postage are the same today as they were before the Coronavirus outbreak." Opposition at 7. In this world—the real world—Huuuge's suggestion that "any Huuuge customer who wants to opt out of arbitration . . . can easily buy stamps at a grocery store, a drug store, a post office, or online, and mail an opt out notice at a post office or mailbox," *id*. at 6-7, is both dangerous and offensive. Huuuge obviously can't control the novel coronavirus, but it can control how it responds to the new normal. And in the new normal world, requiring users to venture out into public spaces to obtain envelopes and stamps and mail a physical letter to Huuuge just to "opt out" of its forced arbitration clause is certainly coercive.

Less critical for public health and safety, but no less important for the protection of substantive legal rights, are two other significant differences between this case and *Big Fish*. First, unlike here, the *Big Fish* Terms of Use didn't contain a choice of law clause purporting to select something other than Washington law. Huuuge's failure to disclose its California choice-of-law clause in the pop-up is misleading because, at the very least, the choice-of-law clause allows Huuuge to make arguments it wouldn't otherwise have to attack putative class members' Washington statutory claims. Second, defense counsel in *Big Fish* conferred with plaintiffs' counsel before broadcasting to Big Fish users an 800-number that could be used to contact

PLS.' REPLY ISO TRO
No. 18-cv-05276-RBL- 1

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

plaintiffs' counsel about the case. Declaration of Todd Logan ("Logan Decl.") ¶ 3. Here, rather than consulting with Plaintiff's counsel first, Huuuge simply used the same number shown in the *Big Fish* pop-up, even though that number leads to a voicemail message about the *Big Fish* litigation and is staffed by Edelson PC employees specifically trained to answer questions about the *Big Fish* litigation. Furthermore, every Big Fish user is a putative class member, so it made sense in that litigation to broadcast the 800-number to all users. Here, in contrast, only Huuuge's Washington users are members of the putative class. Huuuge unnecessarily compounded the confusion it created by publishing the wrong 800-number and then broadcasting that wrong number to its entire nationwide userbase—some 98% of whom are not putative class members. And while Huuuge has since updated the pop-up with a new, agreed-upon number, the confusion created by posting the *Big Fish* 800-number nationwide demands corrective notice.

Each of these problems—the coercive (and dangerous) opt-out instructions, the failure to inform putative class members of certain risks to their legal rights, and the avoidable confusion regarding the 800-number—warrant intervention by this Court to ensure proper communication between the parties and putative class members. And because, in the meantime, plaintiffs are likely to suffer irreparable harm because of the coercive and misleading pop-up, this Court should issue the requested TRO.[1]

**ARGUMENT**

All elements for issuing a TRO are met. First, despite using essentially the same pop-up language as the defendants in the *Big Fish* litigation, Huuuge's attempt to bind putative class members to its Revised Terms of Use here is coercive, misleading, and confusing—and Plaintiff is therefore likely to succeed on the merits of his argument that this Court should exercise its authority over Huuuge's communications with putative class members pursuant to Rule 23(d). Second, absent a TRO, putative class members will continue to suffer irreparable harm because,

---

[1] To be clear, Plaintiff is not seeking a "sweeping bar on all communications by Huuuge." (Opposition at 5) (internal quotations omitted). Plaintiff just asks that any communications between Huuuge and putative class members meet minimum standards set out by this Court to avoid coercion and misunderstanding.

PLS.' REPLY ISO TRO
No. 18-cv-05276-RBL- 2

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

once misinformation is presented to putative class members, it is hard to later correct it effectively. Finally, while a TRO would stop the ongoing irreparable harm to putative class members while this Court considers the merits, Huuuge points to no countervailing harm a TRO would cause to itself or to the public interest beyond vague bromides about its freedom of speech and right to conduct business.

## I. WILSON IS LIKELY TO SUCCEED ON THE MERITS BECAUSE HUUUGE'S CONDUCT IS COERCIVE, MISLEADING, AND CONFUSING.

In the *Big Fish* litigation, this Court—without making any decision as to whether the *Big Fish* pop-up resulted in any binding agreements—outlined three minimum requirements for defendants *attempting* to communicate with putative class members to bind them to new Terms of Use during pending litigation: (1) putative class members must be given an opportunity to opt out of the new terms, (2) defendants must briefly explain to putative class members the rights at issue such that an average user would understand what they are giving up by agreeing to the new terms, and (3) defendants must provide proper contact information for the plaintiffs' attorneys. *Kater v. Churchill Downs Inc.*, No. 15-cv-0612, 2019 WL 6130844, at *6 (W.D. Wash. Nov. 11, 2019). Huuuge's efforts here fail on all counts.

First, in order to avoid coercion, putative class members must be given a "*realistic* opportunity to opt out of the defendant's new terms." *Kater*, 2019 WL 6130844 at *4 (emphasis added). Here, current events have rendered Huuuge's snail-mail-only opt-out procedure unrealistic and impermissible. On March 23, 2020, Governor Inslee issued Proclamation 20-25, which bars all people in Washington from leaving their home or residence except to participate in essential activities. Venturing out into public spaces to buy stamps and envelopes to mail an opt-out letter to Huuuge is not an identified "essential" activity. Forcing putative class members to make a "stark choice" between complying with the Washington Stay Home Order and relinquishing their class action rights on the one hand, or risking their own and others' health to

PLS.' REPLY ISO TRO
No. 18-cv-05276-RBL- 3

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

maintain those rights on the other, is coercive and "clearly intended to steer putative class members away from participating in th[is] case[]." *Kater*, 2019 WL 6130844, at *4.[2]

Second, Huuuge's pop-up fails to explain what putative class members are giving up if they agree to the Revised Terms. Specifically, as discussed in Plaintiff's Motion for a TRO, Dkt. 69 (the "Motion"), the Pop-Up fails to mention (let alone explain) either the Revised Terms' California choice-of-law clause or its one-year contractual limitations period. *See* Motion at 7. These two provisions have potentially significant impacts on putative class members' ability to pursue their Washington statutory claims against Huuuge. *Id*. In response, Huuuge states simply that the California choice-of-law clause "does not displace any statutory claims or remedies that may exist under any state law" and that both the choice-of-law and contractual limitations period clauses "would apply only to claims arising after the date a user assents to the Terms of Use." Opposition at 8. Huuuge also later states that "Huuuge's communications do not ask putative class members to extinguish any claims," *id.* at 11, and that "Huuuge's pop-up message and updated Terms of Use do not extinguish claims," *id.* at 13. But unless Huuuge is conclusively bound by these statements, the risk remains to putative class members that Huuuge will later argue that the California choice-of-law clause bars claims under Washington law and/or that older losses are time-barred by the contractual limitations period. Either way, the fact that these questions even exist about putative class members' rights is not disclosed in the pop-up, let alone "briefly explain[ed]" such that an average user would understand. *Kater*, 2019 WL 6130844, at *6. *see also id.* at *3 ("[C]ourts focus on . . . whether putative class members are at risk of forfeiting their rights without really knowing what they are.").

---

[2] The difference between Huuuge's snail-mail-only opt-out procedure and the opt-out procedure set forth in one of the cases cited in Huuuge's Response Brief is telling. In *Adtrader, Inc. v. Google LLC*, No. 17-cv-07082, 2018 WL 1876950 (N.D. Cal. Apr. 19, 2018), the method of opting out of a new arbitration clause offered by Google was entirely online. *Id*. at *5. An online opt-out procedure makes sense for tech companies in the best of times; it makes especially good sense during a global pandemic when public health and government proclamations require people to shelter in place.

PLS.' REPLY ISO TRO
No. 18-cv-05276-RBL- 4

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

Third, Huuuge's pop-up failed to provide the right contact information for Plaintiff's counsel. In the *Big Fish* litigation, this Court encouraged the parties to work together to draft a pop-up that complied with the parameters it set forth for proper communications with putative class members. *See Kater*, 2019 WL 6130844, at *6 ("The parties would be well-advised to cooperate and together attempt to draft language for a notice[.]"). While the parties ultimately could not agree on the language to be used in a pop-up, the *Big Fish* defendants used an 800-number supplied by plaintiffs' counsel, which was set up as a dedicated line to receive calls about the *Big Fish* litigation. Logan Decl. ¶ 4. Here, in contrast, Huuuge simply included the *Big Fish* litigation 800-number in their pop-up—and launched that pop-up nationwide, to a userbase of whom only a small fraction are putative class members—all without prior notice to Plaintiff's counsel. That number, which is staffed by Edelson PC employees trained to answer questions about the *Big Fish* litigation and has a voicemail message directed solely to *Big Fish* callers, continued to be displayed to Huuuge users for nine days until Huuuge updated the pop-up with a new 800-number provided by Plaintiff's counsel. Huuuge tries to pin the delay on Plaintiff's counsel, *see* Opposition at 8, but obtaining and configuring the new 800-number was no small feat. After Plaintiff's counsel ordered the new number from the vendor, it took eight (8) days for the vendor to activate the line. Thereafter, Plaintiff's counsel had to configure that number to a line at Plaintiff's counsel's office, record a voicemail script, test the line, and train staff to respond to calls. Logan Decl. ¶ 5.[3] The point is, all of the confusion could have been avoided had Huuuge simply reached out to Plaintiff's counsel prior to including the *Big Fish* 800-number in its pop-up. Regardless, corrective notice should be issued to alleviate any confusion to putative class members here resulting from their calling a number dedicated to *Big Fish* putative class members.

---

[3] Testing the line was critical here, as it revealed that, for some reason, calls from phones on the Verizon network were not coming through, an issue that took additional time to address and solve with the vendor of the 1-800 number. Logan Decl. ¶ 6.

Pls.' Reply ISO TRO
No. 18-cv-05276-RBL- 5

Tousley Brain Stephens, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

In short, because Huuuge's conduct is coercive, misleading, and confusing, Plaintiff is likely to prevail on the merits of his request that Huuuge revise its pop-up and opt-out procedure and issue some type of corrective notice.

## II. PUTATIVE CLASS MEMBERS ARE LIKELY TO SUFFER IRREPARABLE HARM ABSENT A TRO.

As explained in Plaintiff's Motion, Huuuge's conduct has caused (and continues to cause) irreparable harm because once misinformation about this litigation is communicated to putative class members, that bell cannot be unrung. *See* Motion at 9 (citing *Kater*, 2019 WL 6130844, at *5). Huuuge offers two arguments in response. First, it asserts that Wilson must show irreparable harm to himself (rather than to the putative class), and that he has not suffered any such harm because he is expressly excluded from Huuuge's Revised Terms of Use. *See* Opposition at 14-15. Second, Huuuge asserts that even if harm to putative class members were relevant, there is no irreparable harm to them here because any misinformation can be remedied by subsequent communications. *Id.* at 15-17. Both of Huuuge's responses, however, are directly contrary to this Court's ruling in the *Big Fish* litigation.

There, as here, the named plaintiffs were expressly excluded from the defendants' revised terms of use. *Kater*, 2019 WL 6130844, at *2. But that fact had no bearing on this Court's determination that the *Big Fish* defendants' coercive and misleading communications caused irreparable harm. *Id.* at *5. And while Huuuge argues that named plaintiffs cannot seek relief on behalf of a putative class prior to class certification, *see* Opposition at 15, this Court has broad authority under Rule 23(d) to regulate communications with putative class members. *See Kater*, 2019 WL 6130844, at *3 (collecting cases). Indeed, the fact that a class has not yet been certified actually increases the likelihood of irreparable harm, because the absence of an initial court-sponsored class notice makes it harder to undo the effects of any previously communicated misinformation. *See id.* at *5 ("Because no official class notice has been sent, Big Fish's coercive pop-up will be the first that many putative class members hear about these lawsuits.

PLS.' REPLY ISO TRO
No. 18-cv-05276-RBL- 6

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1  There is a serious risk that putative class members, having been pressured to click away their
2  right to participate in these cases, will be inclined to disregard further communications about
3  them.").

4  **III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR PLAINTIFF.**

5         Finally, the balance of equities and the public interest favors issuance of the requested
6  TRO. *See* Motion at 10–11. Huuuge suggests in its response brief that entering the TRO would
7  "forbid[] [it] from making any change to its Terms of Use or the way they are presented for the
8  duration of this lawsuit" and that it would be "prevented indefinitely from requiring users of its
9  products to agree to terms." Opposition at 18. But Plaintiff seeks nothing of the sort. He only
10 seeks to prohibit coercive and misleading attempts to foist new Terms upon Huuuge users.
11 Huuuge is free to change its terms and ask its users to agree to those terms, so long as it does so
12 in a way consistent with minimum standards—established by this Court and others—for
13 communicating with putative class members during ongoing litigation. Plaintiff asserts that
14 Huuuge has fallen short of those standards here, and Plaintiff seeks a TRO until this Court can
15 rule on that question. Issuing the TRO would halt the ongoing irreparable harm to putative class
16 members outlined in Plaintiff's Motion and above, and Huuuge points to no potential harm to
17 itself from the proposed TRO other than a vague invocation of its "ability to conduct its business
18 operations and communicate with its users." Opposition at 18. That is not enough. *See Kater*,
19 2019 WL 6130844, at *5 ("Issuance of a TRO or preliminary injunction would have very little
20 practical effect on Big Fish. It would have to take down the new pop-up and abide by the Court's
21 limitations in future communications with the putative class. Big Fish will not lose its ability to
22 communicate with the majority of its customers[.]").

23        Nor does Huuuge's conclusory reference to its "right to speak and contract freely" and
24 "the strong public policy underlying the Federal Arbitration Act" change the calculus.
25 Opposition at 20. Neither the First Amendment nor the Federal Arbitration Act allow people to
26 coerce or mislead others to enter into agreements. *See Coyote Publ'g, Inc. v. Miller*, 598 F.3d

27

PLS.' REPLY ISO TRO
No. 18-cv-05276-RBL- 7

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

592, 602 (9th Cir. 2010) ("For commercial speech to come within [the First Amendment], it at least must . . . not be misleading.") (quoting *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980)); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) ("[T]he FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion.") (internal quotation omitted).[4]

## CONCLUSION

For the reasons discussed in Plaintiff's Motion and above, the Court should enter the requested TRO.

Dated: April 2, 2020

Respectfully submitted,

**SEAN WILSON**, individually and on behalf of all others similarly situated,

By: */s/* Todd Logan

EDELSON PC
Rafey Balabanian*
rbalabanian@edelson.com
Todd Logan*
tlogan@edelson.com
Brandt Silver-Korn*
bsilverkorn@edelson.com
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300 | Fax: 415.373.9435

By: */s/* Cecily C. Shiel

---

[4] The First Amendment likely does not even apply to Huuuge's pop-up based communications with putative class members, given that its transactions with Washington users are almost certainly unlawful gambling. *See Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788 (9th Cir. 2018) (holding that online social casino apps "fall[] within Washington's definition of an illegal gambling game"); *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 686 (9th Cir. 2019) ("Any First Amendment interest . . . is altogether absent when the commercial activity itself is illegal[.]") (internal quotations omitted).

PLS.' REPLY ISO TRO
No. 18-cv-05276-RBL- 8

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

TOUSLEY BRAIN STEPHENS PLLC
Cecily C. Shiel, WSBA #50061
cshiel@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 | Fax: 206.682.2992

*Admitted *pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*

PLS.' REPLY ISO TRO
No. 18-cv-05276-RBL- 9

TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992