The Honorable Ronald B. Leighton

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| SEAN WILSON, individually and on behalf of all others similarly situated, | Case No. 18-cv-05276-RBL |
| *Plaintiff,* | **UNOPPOSED[1] MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** |
| v. | |
| HUUUGE, INC., a Delaware corporation, | NOTE ON MOTION CALENDAR: |
| *Defendant.* | August 23, 2020 |

---

[1] Huuuge, Inc. is not filing an opposition to this motion as part of the parties' settlement agreement, but nor does it agree with the statements or characterizations of the law made herein.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 1

    A.    Plaintiff's Allegations. ........................................................................... 1

    B.    Relevant Litigation History. ................................................................. 2

    C.    The ISGA's Efforts to Change Washington Gambling Law. .............. 3

    D.    The Parties Mediate and Reach a Settlement. ..................................... 4

THE TERMS OF THE SETTLEMENT AGREEMENT ............................................. 5

    A.    Settlement Class Definition ................................................................. 5

    B.    Monetary Benefits ............................................................................... 5

    C.    Prospective Relief ............................................................................... 6

    D.    Release ................................................................................................. 6

    E.    Class Notice ......................................................................................... 6

    F.    Incentive Award Requests .................................................................. 7

    G.    Attorneys' Fees and Expense Requests .............................................. 7

ARGUMENT ................................................................................................................. 7

    I.    The Proposed Class Should Be Certified. ........................................... 7

        A.    The Proposed Class Meets the Requirements of Rule 23. .................. 8

            1.    The Proposed Settlement Class is Sufficiently Numerous. ..................... 8

            2.    Settlement Class Members Share Common Questions of Law and Fact. ................................................................. 9

            3.    Plaintiff's Claims are Typical of Settlement Class Members' Claims. ...................................................... 10

            4.    Plaintiff and His Counsel Adequately Represent the Settlement Class. ............................................................ 11

        B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3). ................. 12

            1.    Common Questions of Law and Fact Predominate. ............................. 13

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-cv-5276- ii

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

2. A Class Action is the Superior Method of Resolving the Controversy. .................................................................. 14

II. The Proposed Settlement Merits Preliminary Approval. .......................................... 15

    A. The Proposed Settlement is the Product of Serious, Informed, Non-Collusive Negotiations. .............................................. 16

    B. A *Churchill* Analysis Supports Preliminary Approval. .................... 17

        1. The Strength of Plaintiff's Case, Risk of Further Litigation, and Risk of Maintaining Class Action Status. ..................... 18

        2. The Amount Offered in Settlement. .................................. 19

        3. Extent of Discovery Completed and the Stage of the Proceedings. ...... 20

        4. The Experience and Views of Counsel. .............................. 21

III. The Court Should Approve the Proposed Notice Plan. .............................. 22

CONCLUSION .................................................................................. 24

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

# <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases:**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................................ 7, 8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2014)............................................................................................. 13

*Gen. Tel. Co. of the SW v. Falcon*,
    457 U.S. 147 (1982)............................................................................................. 10

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)................................................................................... 13, 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)............................................................................................... 9

**United States Circuit Court of Appeals Cases:**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ............................................................................. 10

*Bateman v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) ............................................................................... 7

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ............................................................................. 8

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ........................................................................... 15

*Churchill Vill., L.L.C. v. Gen. Elect.*,
    361 F.3d 566 (9th Cir. 2004) ............................................... 16, 17, 18, 19, 21

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ............................................................................. 11

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ............................................................................. 9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................... 9, 10, 11, 12

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................. 16, 17

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ......................................................................... 8

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .......................................................................... 21

*Kater v. Churchill Downs*,
  886 F.3d 784 (9th Cir. 2018) .......................................................................... 1

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ................................................................... 19, 20

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008) .......................................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................. 16, 18, 21

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ......................................................................... 16

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ....................................................................... 13

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ....................................................................... 17

*Wilson v. Huuuge, Inc.*
  944 F.3d 1212 (9th Cir. 2019) ......................................................................... 2

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ................................................................. 10, 14

**United States District Court Cases:**

*Ali v. Menzies Aviation, Inc.*,
  No. 2:16-cv-00262 RSL, 2016 WL 4611542 (W.D. Wash. Sept. 6, 2016) ...................... 8

*Bennett v. SimplexGrinnell LP*,
  No. 11-cv-01854-JST, 2015 WL 1849543 (N.D. Cal. Apr. 22, 2015) ............................ 20

*Bess v. Ocwen Loan Servicing LLC*,
  334 F.R.D. 432 (W.D. Wash. 2020) .............................................................. 14

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-cv-5276-   v

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1
2

*Betorina v. Randstad US, L.P.*,
  No. 15-cv-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ............................ 18

3
4

*Geier v. m-Qube, Inc.*,
  No. 13-cv-354, 2016 WL 3458345 (W.D. Wash. June 24, 2016) ..................................... 8

5
6

*Gragg v. Orange CAB Co., Inc.*,
  No. 12-cv-0576 RSL, 2017 WL 785170 (W.D. Wash. Mar. 1, 2017) ............................. 16

7

*Helde v. Knight Transportation, Inc.*,
  No. 2:12-cv-00904 RSL (W.D. Wash. May 24, 2017) ..................................................... 16

8
9

*Ikuseghan v. Multicare Health Sys.*,
  No. 3:14-cv-05539 BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016) ......... 19, 21, 22

10
11

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  No. 16-cv-05541-JST, 2020 WL 1786159 (N.D. Cal. Apr. 7, 2020) ........................ 19, 20

12

*Jama v. GCA Services Group, Inc.*,
  No. 16-cv-0331 RSL, 2017 WL 4758722 (W.D. Wash. Oct. 20, 2017) ..................... 8, 12

13
14

*Kelley v. Microsoft Corp.*,
  251 F.R.D. 544 (W.D. Wash. 2008) ................................................................................ 15

15
16

*Reichert v. Keefe Commissary Network, LLC*,
  331 F.R.D. 541 (W.D. Wash. 2019) ........................................................................... 13, 14

17

*Relente v. Viator, Inc.*,
  No. 12-cv-05868-JD, 2015 WL 2089178 (N.D. Cal. May 4, 2015) ................................ 15

18
19

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
  No. 14-cv-0268-JCC, 2016 WL 4052588 (W.D. Wash. Feb. 3, 2016) .......... 15, 16, 19, 21

20
21

*Scott v. United Servs. Auto. Ass'n*,
  No. 11-cv-1422-JCC, 2013 WL 12251170 (W.D. Wash. Jan. 7, 2013) .......................... 17

22
23

*Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*,
  No. 2:16-cv-1211 WBS AC, 2019 WL 358517 (E.D. Cal. Jan. 29, 2019) ...................... 15

24

*Smith v. Experian Info. Sols., Inc.*,
  No. 17-cv-00629-CJC-AFM, 2020 WL 4592788 (C.D. Cal. Aug. 10, 2020) ................. 22

25
26

*Tavenner v. Talon Grp.*,
  No. 09-cv-1370 RSL, 2012 WL 1022814 (W.D. Wash. Mar. 26, 2012) ........................... 9

27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

*Taylor v. Universal Auto Grp. I, Inc.*,
　　No. 13-cv-5245 KLS, 2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) .................. 13, 15

*Wilson v. Huuuge, Inc.*
　　351 F. Supp. 3d 1308 (W.D. Wash. 2018) .......................................................................... 2

*Wilson v. Maxim Healthcare Servs., Inc.*,
　　No. 14-cv-789 RSL, 2017 WL 2988289 (W.D. Wash. June 20, 2017) ............................ 16

**Miscellaneous Authority:**

Cornerstone Research, SECURITIES CLASS ACTION SETTLEMENTS,
2017 REVIEW AND ANALYSIS, (2018) ............................................................................ 20

Cornerstone Research, SECURITIES CLASS ACTION SETTLEMENTS,
2018 REVIEW AND ANALYSIS, (2019) ............................................................................ 20

Fed. R. Civ. P. 23 .................................................................................... *passim*

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS
　　§ 11.25 (4th ed. 2002) ................................................................................................... 15

Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS
　　§ 11:53 (4th ed. 2002) ................................................................................................... 24

MANUAL FOR COMPLEX LITIGATION (Fourth)
　　§ 21.633 (2004) .............................................................................................................. 8

RCW § 4.24.070 .................................................................................................................. 2

RCW § 9.46.010 .................................................................................................................. 9

RCW § 19.86.010 ................................................................................................................ 2

W. Rubenstein, NEWBERG ON CLASS ACTIONS
　　§ 4:49 (5th ed. 2012) ..................................................................................................... 13

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1

**INTRODUCTION**

2      This is the third settlement in a long-running cluster of litigation alleging that social

3  casino apps are illegal gambling. Since its filing in early 2018, the Parties have vigorously

4  contested this case before both this Court and the Ninth Circuit. With Defendant's motion to

5  compel arbitration denied, and after weeks of arm's-length negotiations including a full-day

6  mediation session facilitated by the Honorable Layn R. Phillips (retired, and now of Phillips

7  ADR) and his staff, Plaintiff Sean Wilson and Defendant Huuuge, Inc. have reached a pioneering

8  settlement that is an excellent result for the class.

9      The proposed Settlement provides a non-reversionary cash recovery of $6.5 million from

10  which participating class members stand to recover substantial portions of their alleged damages,

11  ranging from 10% (at the low end) to more than 50% (at the top end). Particularly in the midst of

12  a pandemic-driven recession, these recoveries will be life-changing for many class members.

13  Importantly, the settlement further requires Huuuge to implement meaningful prospective relief,

14  including by providing addiction-related resources within their social casino games and by

15  creating and honoring a comprehensive self-exclusion policy. Because this settlement is fair,

16  reasonable, and adequate, the Court should not hesitate to approve it.

17      Consequently, Plaintiff respectfully requests that the Court: (i) certify the proposed

18  Settlement Class; (ii) grant preliminary approval of the settlement; (iii) appoint Sean Wilson and

19  Heidi Hammer as Class Representatives; (iv) appoint Jay Edelson, Rafey S. Balabanian, Todd

20  Logan, Alexander G. Tievsky, and Brandt Silver-Korn as Class Counsel; (v) approve the

21  proposed notice plan; and (vi) schedule the final approval hearing.

22

**BACKGROUND**

23  **A.**    **Plaintiff's Allegations.**

24      In April 2018, on the heels of the Ninth Circuit's opinion in *Kater v. Churchill Downs*,

25  886 F.3d 784 (9th Cir. 2018), Plaintiff Sean Wilson filed this proposed class action lawsuit

26  alleging that Defendant's social casino games, which include "Huuuge Casino," "Billionaire

27  Casino," and "Stars Casino" (altogether the "Applications"), constitute unlawful gambling under

Washington's gambling laws. *See* Dkt. 1. The gist of the Complaint was that the "social casino" business model, which drives players to pay real money for virtual casino chips, is illegal under Washington law because all internet gambling is illegal in Washington. More specifically, Wilson alleged that the Applications entice users with an initial allotment of free coins to wager on an array of Vegas-style slots, *id.* ¶ 23, ¶ 27, the outcomes of which are "based entirely on chance." *Id.* ¶ 28. He alleged that these initial free chips are "quickly los[t]" in the course of gameplay, *id.* ¶ 25, and that once the free chips are exhausted, users purchase more chips with real money (in packages ranging from $2 to $50 each) if they wish to extend gameplay. *Id.* Because these virtual chips "extend gameplay," *id.* ¶ 47, Wilson alleged that these virtual chips are "things of value" under Washington's gambling laws, and that under RCW § 4.24.070 (the "Recovery of Money Lost at Gambling Act" or "RMLGA"), users are entitled to recoup their losses. *See id.* ¶¶ 42–53. Wilson further alleged that these actions also constituted violations of RCW § 19.86.010 (the "Washington Consumer Protection Act" or "CPA") and common law unjust enrichment. *See id.* ¶¶ 54–71.

### B.   Relevant Litigation History.

In July 2018, Huuuge moved to compel arbitration, arguing that Plaintiff agreed to Huuuge's Terms of Use when he downloaded its app and played its games, and in so doing waived his right to pursue relief through a class action. *See* Dkt. 31. Plaintiff opposed, arguing that Huuuge had not put him on notice of and thus he could not be bound by Huuuge's Terms. *See* Dkt. 35. In November 2018, in a published opinion, the Court denied Huuuge's motion. *See Wilson v. Huuuge, Inc.*, 351 F. Supp. 3d 1308, 1315–17 (W.D. Wash. 2018) ("The fact is, Huuuge chose to make its Terms non-invasive so that users could charge ahead to play their game. Now, they must live with the consequences of that decision.").

Huuuge timely appealed and successfully sought a stay pending appeal. *See* Dkt. 47, 49. In December 2019, the Ninth Circuit affirmed. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) ("Instead of requiring a user to affirmatively assent, Huuuge chose to gamble on whether its users would have notice of its Terms. The odds are not in its favor. Wilson did not

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   have constructive notice of the Terms, and thus is not bound by Huuuge's arbitration clause in

2   the Terms. We affirm the district court's denial of Huuuge's motion to compel arbitration.").

3        In March 2020, as the novel coronavirus tore through Washington state, Huuuge inserted

4   a pop-up window into the Apps, preventing users from accessing their previously-purchased

5   chips unless they clicked a button purporting to indicate agreement to Huuuge's revised Terms of

6   Use—replete with its "Governing Law and Binding Arbitration" ("GLBA") provision. *See* Dkt.

7   69. Users were informed the only way to opt-out of the GLBA provision was to physically mail a

8   letter to Huuuge's lawyers within 30 days. *Id.* Plaintiff filed a motion for a temporary restraining

9   order seeking to have the pop-up window removed, *see id.*, but the Court denied Plaintiff's

10   motion. *See* Dkt. 82.

11        Separately, following unsuccessful negotiations as to the appropriate scope of third-party

12   discovery, Plaintiff subpoenaed Apple, Google, and Facebook in an effort to obtain information

13   pertaining to the proposed Class's virtual chip purchases. *See* Dkt. 85. In response, Huuuge filed

14   a motion for a protective order seeking to have Plaintiff's subpoenas quashed. *See* Dkt. 88.

15        With that motion practice pending, in May 2020, the Parties agreed to attempt to resolve

16   this case through mediation.

17       **C.    The ISGA's Efforts to Change Washington Gambling Law.**

18        Over the course of this litigation, many of Huuuge's social casino industry peers,

19   organized under the banner of the International Social Gaming Association ("ISGA"), have

20   participated in the hiring of several well-connected lobbyists in an effort to try to change

21   Washington gambling law.[2] *See* Logan Decl. ¶ 3. The ISGA even retained former WSGC

22   Commissioner Chris Stearns and had him advocate at a legislative committee hearing on its

23   behalf.[3] Starting in early 2019, ISGA lobbyists began providing legislators draft legislation that

24   would amend Washington's gambling laws with the effect (and specific intent) of gutting these

---

[2]    Plaintiff has no reason to believe Huuuge was ever a member of ISGA or that Huuuge ever participated in the ISGA's lobbying activities.

[3]    *Hearing on H.B. 2720 before the H. Civil Rights & Judiciary Committee*, 66th Leg., Reg. Sess. (Wash. 2020) (statement of Chris Stearns), https://www.tvw.org/watch/?clientID=9375922947&eventID=2020011330& startStreamAt=4464. About the ISGA, https://cite.law/QDU6-TDLJ.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   lawsuits. *See* Logan Decl. ¶ 4. Over time, these efforts gained steam, with Senators Mark Mullet

2   and John Braun, as well as Representatives Zack Hudgins, Brandon Vick, Bill Jenkin and Brian

3   Blake, collectively sponsoring four (4) bills threatening to kill this case and others like it by

4   "clarifying" that players who lose money playing social casinos cannot recover under the

5   RMLGA. H.B. 2720, 66th Leg., Reg. Sess. (Wash. 2020); S.B. 6568, 66th Leg., Reg. Sess.

6   (Wash. 2020); H.B. 2041, 66th Leg., Reg Sess. (Wash. 2019); S.B. 5886, 66th Leg., Reg. Sess.

7   (Wash. 2019).

8       In response, Plaintiff's counsel met with lawmakers at the State Capitol, offered written

9   and in-person testimony before the House Civil Rights & Judiciary Committee, corresponded

10  with Senator Mullet, spoke with local press about the ISGA's efforts, and coordinated the

11  submission of more than 100 letters to Washington State Representatives from social casino

12  players. *See* Logan Decl. ¶ 5. These efforts ultimately held the line. Each bill introduced over the

13  past two years has stalled, and the ISGA is now resigned to taking its next stab at rewriting

14  Washington's gambling laws during the 2021 legislative session.

15      **D.    The Parties Mediate and Reach a Settlement.**

16      Settlement talks began in earnest in May 2020, when the Parties agreed to schedule a

17  mediation session in mid-June 2020 with Judge Phillips (ret.) of Phillips ADR. *See* Logan Decl.

18  ¶ 6. From that point forward, over the following days and weeks, the Parties were in near-daily

19  communication with each other and with the Phillips ADR team as the Parties sought to

20  crystallize the disputed issues, produce focal information and data, and narrow down potential

21  frameworks for resolution. *See* Logan Decl. ¶ 7. During this period, Defendant provided Plaintiff

22  with detailed transactional data; the Parties exchanged substantive briefing on the core facts,

23  legal issues, litigation risks, and potential settlement structures; and the Parties supplemented that

24  briefing with extensive written and telephonic correspondence, mediated by the Phillips ADR

25  team, clarifying each other's positions. *See id.*

26      Following a full-day mediation session on June 15, 2020, and despite the skilled

27  assistance of Judge Phillips, the Parties still had not reached an agreement in principle. Logan

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-cv-5276- 4

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   Decl. ¶ 8. Instead, the mediation ended with Plaintiff making a "last, best, and final" demand set
2   to expire at noon on June 16, 2020. *Id.* On June 16, 2020, Huuuge accepted that demand. *Id.*

3       And the negotiations didn't end there: for the next two months, the Parties worked out the
4   details of a final and binding class action settlement agreement, exchanged several rounds of a
5   working settlement document and supporting exhibits, met and conferred telephonically to flesh
6   out the remaining disputed provisions, and heavily negotiated the form and substance of a notice
7   and administration plan. *See id.* ¶ 10. Finally, on August 21, 2020, the Parties completed
8   execution of the Settlement Agreement now before the Court. *See id.* ¶¶ 11, 24 Exhibit 1 (Class
9   Action Settlement Agreement).

10             **THE TERMS OF THE SETTLEMENT AGREEMENT**

11       For the Court's convenience, the key terms of the Agreement are summarized below.

12       **A.**    **Settlement Class Definition:** The Settlement Class is defined as follows:
13   "Washington residents (as reasonably determined by IP address information or other information
14   furnished by Platform Providers) who played the Applications on or before preliminary approval
15   of the settlement."[4] *See* Agreement § 1.33.

16       **B.**    **Monetary Benefits:** Defendant has agreed to establish a $6,500,000.00
17   Settlement Fund from which Settlement Class Members who file a valid claim will be entitled to
18   recover a cash payment, after deducting costs and administrative expenses, any fee award to
19   proposed Class Counsel, and any incentive payments to the Class Representatives. *See*
20   Agreement § 1.32. No portion of the Settlement Fund will revert to Defendant. *Id.* § 2.1(j). Any
21   Settlement Class Member checks not cashed within 90 days of issuance will be either placed in a
22   second distribution fund or donated to a Court-approved *cy pres* recipient. *Id.* § 2.1(i). As
23   described in detail in the Plan of Allocation, the amount of each Settlement Class Member's
24   payment will depend first on whether or not the Settlement Class Member is "potentially subject

25   ⁴    Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this action and members
26   of their families, (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any
    entity in which Defendant or its parents have a controlling interest and their current or former officers, directors, and
27   employees, (3) persons who properly execute and file a timely request for exclusion from the settlement class, and
    (4) the legal representatives, successors or assigns of any such excluded persons. *See* Agreement § 1.33.

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-cv-5276- 5

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

to Huuuge's Governing Law and Binding Arbitration provision." *See id.* §§ 1.36, 2.1(c), (d); Exhibit E. Recovery will vary from the baselines established by GLBA status according to the Settlement Class Member's Lifetime Spending Amount (those with higher Lifetime Spending Amounts are eligible to recover a greater percentage back) and overall Settlement Class Member participation levels. *See id.* Based on its experience, Angeion Group (the "Settlement Administrator") anticipates that participating Settlement Class Members in the highest category of Lifetime Spending Amounts will likely recover gross payments in excess of 50% of their Lifetime Spending Amounts, and that participating Settlement Class Members in the smallest category of Lifetime Spending Amounts will likely recover gross payments in excess of 10% of their Lifetime Spending Amounts. *See* Declaration of Steven Weisbrot ("Weisbrot Decl.") ¶ 50. Settlement Class Members will be able to quickly and easily estimate the amount of their potential payment on the Settlement Website. *See* Agreement § 4.2(c).

**C.     Prospective Relief:** For Applications Huuuge continues to offer to Washington residents (as determined by IP address or geolocations), Huuuge has agreed to establish a voluntary self-exclusion policy that will allow players to exclude themselves from further gameplay. *See id.* § 2.2. Huuuge must also make a link to that policy prominently available within the games, and its customer service representatives will provide the link to players who contact them and reference or seek help for video game behavior disorders. *See id.* Huuuge has also agreed to other prospective relief measures, including changes to game mechanics such that when players run out of virtual chips, they won't need to purchase additional chips or wait to receive free additional chips to continue playing at least one game within the Application they are playing. *See id.*

**D.     Release:** In exchange for the relief described above, Defendant and other entities, including the Platform Providers Facebook, Apple, Google, and Amazon, will be released from all claims raised in these cases relating to the operation of Defendant's social casino games and the sale of virtual chips in those games, including claims that the games were illegal gambling or the chips were "things of value." The full release is contained at *id.* § 1.27.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

**E.     Class Notice:** The Settlement Fund will be used to pay the costs of sending the notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. *Id.* § 1.35. Angeion Group, the Settlement Administrator, will send class notices via email and/or U.S. Mail based on records produced by Defendant and obtained from third parties. *Id.* §§ 4.1, 4.2. Angeion will also establish a settlement website and implement a digital publication notice campaign targeting class members. *Id.* In line with Rule 23, the notice will include the nature of the action, a summary of the settlement terms, and instructions on how to object or opt out of the settlement, including relevant deadlines. *Id.* § 4.3.

**F.     Incentive Award Requests:** With no consideration having been given or received, Sean Wilson will seek no more than $10,000 as an incentive award, and each other Class Representative will seek at most $1,000 as an incentive award. *See id.* § 9.3. Defendant explicitly reserves its right to challenge any incentive award petition. *See id.*

**G.     Attorneys' Fees and Expenses Requests:** The Parties have agreed that proposed Class Counsel is entitled to an award of reasonable attorneys' fees and expenses in an amount to be determined by the Court and to be paid from the Settlement Fund. *See id.* § 9.1. Without the Parties having discussed the issue of attorneys' fees at any point in their negotiations, and with no consideration given or received, proposed Class Counsel have unilaterally agreed to limit any petition for attorneys' fees to no more than 30 percent (30%) of the Settlement Fund, plus reimbursement of expenses. *Id.* Any fee award requested by proposed Class Counsel will of course be subject to the Court's approval. *Id.*

## ARGUMENT

## I.     The Proposed Class Should Be Certified.

Before granting preliminary approval, the Court must first determine that the proposed class is appropriate for certification. To do so, the proposed class must meet the requirements of Rule 23(a) and at least one subsection of Rule 23(b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997); *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5276- 7

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

2010); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.633 (2004).[5]

Rule 23(a) requires that a plaintiff demonstrates that (1) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity), (2) there are questions of law or fact common to the proposed class (commonality), (3) the claims of the plaintiff are typical of those of the class (typicality), and (4) the plaintiff will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4). In addition, where, as here, Plaintiff seeks certification under Rule 23(b)(3), Plaintiff must also demonstrate that common questions predominate over any questions affecting only individual members (predominance), and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy (superiority). *See* Fed. R. Civ. P. 23(b)(3). Because the proposed class is being certified for settlement purposes, the Court "need not inquire whether the case, if tried, would present intractable management problems." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (quoting *Amchem*, 521 U.S. at 620).

### A.   The Proposed Class Meets the Requirements of Rule 23.

#### 1.   The Proposed Settlement Class Is Sufficiently Numerous.

The first prerequisite to class certification under Rule 23(a)—numerosity—requires that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific minimum number of proposed class members required to satisfy the numerosity requirement, but generally a class of forty or more members is considered sufficient. *Ali v. Menzies Aviation, Inc*., No. 2:16-cv-00262 RSL, 2016 WL 4611542, at *1 (W.D. Wash. Sept. 6, 2016); *see Jama v. GCA Services Group, Inc.*, No. 16-cv-0331 RSL, 2017 WL 4758722, at *3 (W.D. Wash. Oct. 20, 2017) (numerosity satisfied by class of 93 class members).

Here, the Settlement Class consists of more than one thousand individuals. *See* Logan

---

[5]      Courts sometimes also inquire into whether the proposed class is "ascertainable," that is, "whether the Court can reasonably identify which individuals are class members and which are not." *Geier v. m-Qube, Inc.*, No. 13-cv-354, 2016 WL 3458345, at *2 (W.D. Wash. June 24, 2016). But in this Circuit there is no separate "administrative feasibility" or "ascertainability" requirement implicit in Rule 23. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017) ("[S]eparate administrative feasibility prerequisite to class certification is not compatible with the language of Rule 23."). Nevertheless, membership in the proposed class here is based on objective, ascertainable criteria: whether a person has previously played an at-issue Application.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   Decl. ¶ 12. Consequently, the proposed class is so numerous that joinder of their claims is

2   impracticable, and the numerosity requirement is satisfied.

3               2.      Settlement Class Members Share Common Questions of Law and Fact.

4           The second requirement of Rule 23(a)—commonality—is satisfied where "there are

5   questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is

6   construed permissively, and is demonstrated when the claims of all class members "depend upon

7   a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc.*

8   *v. Dukes*, 564 U.S. 338, 350, 359 (2011) (citation omitted); *see also Hanlon v. Chrysler Corp.*,

9   150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual

10  predicates is sufficient, as is a common core of salient facts coupled with disparate legal

11  remedies within the class."). The common contention must be of such a nature that it is capable

12  of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue

13  that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

14  Moreover, "[where] the circumstances of each particular class member vary but retain a common

15  core of factual legal issues with the rest of the class, commonality exists," *Parra v. Bashas', Inc.*,

16  536 F.3d 975, 978–79 (9th Cir. 2008), and "[i]t is not necessary that members of the proposed

17  class share every fact in common." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030

18  (9th Cir. 2012) (internal quotations omitted). Indeed, "the theoretical possibility of individual

19  issues is not enough to outweigh the benefits of common resolution of classwide issues."

20  *Tavenner v. Talon Grp.*, No. 09-cv-1370 RSL, 2012 WL 1022814, at *4 (W.D. Wash. Mar. 26,

21  2012).

22          This case presents common questions in spades. For example: are the virtual chips in

23  Defendant's Applications "things of value"? If so, are the Applications "gambling games" under

24  Washington law? If so, are class members entitled to recover their losses under the RMLGA?

25  Does the legislative declaration of purpose in RCW § 9.46.010 render Defendant's alleged

26  violations of gambling laws also unfair practices under the Washington CPA? If so, are proposed

27  class members entitled to pursue an injunction? How about treble damages?

Pl's Unopposed Mot. For Preliminary Approval
Case No. 18-cv-5276-  9

1    These common questions—whose answers depend solely on Defendant's common course

2    of conduct—establish commonality. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th

3    Cir. 2013) (internal quotations omitted) (noting key inquiry is "whether class treatment will

4    generate common answers apt to drive the resolution of the litigation"). At the heart of this case

5    is Plaintiff's allegation that the Applications are illegal gambling. This litigation, if tried to a

6    verdict, would resolve all claims stemming from that allegation in a single stroke. Rule 23(a)'s

7    commonality requirement is therefore satisfied.

8                    3.      Plaintiff's Claims are Typical of Settlement Class Members' Claims.

9            Rule 23(a)'s next requirement—typicality—requires that the class representatives' claims

10   be typical of those of the putative class they seek to represent. Fed. R. Civ. P. 23(a)(3). The

11   purpose of this requirement is "to assure that the interest of the named representative aligns with

12   the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th

13   Cir. 2010) (citation omitted). The test of typicality is "whether other members have the same or

14   similar injury, whether the action is based on conduct which is not unique to the named

15   plaintiff[], and whether other class members have been injured by the same course of conduct."

16   *Id.*; *see also Ali*, 2016 WL 4611542, at *2 (W.D. Wash. Sept. 6, 2016). This is a "permissive"

17   standard and it is met where the representative claims "are reasonably co-extensive with those of

18   absent class members." *Hanlon*, 150 F.3d at 1020. At bottom, "a class representative must be

19   part of the class and possess the same interest and suffer the same injury as the class members."

20   *Ali*, 2016 WL 4611542, at *2 (quoting *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 156

21   (1982)) (internal quotations omitted).

22           Typicality is met here. While the Class Representatives each have different total alleged

23   damages, each possesses legal claims identical to those possessed by all members of the

24   proposed class: that the Applications are illegal gambling games, and consequently that their in-

25   game losses must be returned to them. In other words, each suffered the same injury as every

26   other class member harmed by their use of the allegedly illegal Applications. Accordingly, each

27   has the same interest as every other class member in obtaining all available relief for these

1  alleged violations. The typicality requirement is satisfied.

2          4.      <u>Plaintiff and His Counsel Adequately Represent the Settlement Class.</u>

3          Rule 23(a)'s final requirement—adequacy—requires that the proposed class

4  representatives have and will continue to "fairly and adequately protect the interests of the

5  class." Fed. R. Civ. P. 23(a)(4). To determine if representation is in fact adequate, the Court must

6  ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class

7  members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

8  behalf of the class." *Hanlon*, 150 F.3d at 1020. Further, where a plaintiff's claims are found to be

9  typical of those of the class, appointing that plaintiff as a class representative will also ensure

10  that the interests of the class remain adequately protected. *See Dukes*, 564 U.S. at 349 n.5

11  (discussing how the fulfillment of the typicality requirement usually also supports a finding of

12  adequacy because an adequate representative will have claims that are typical of those of the

13  class).

14          Here, Plaintiff and the other proposed class representative meet the requirements to be

15  appointed Class Representatives. First, as discussed above, they share the same interest in

16  securing relief for the claims at issue as every other member of the proposed Settlement Class,

17  and there is no evidence of any conflict of interest. Plaintiff, for his part, has long demonstrated

18  his willingness to vigorously prosecute this case, including by providing his counsel with

19  relevant documents and testimony, by having his deposition taken in a related matter, and more

20  broadly by helping raise public awareness about the social casino industry. *See* Logan Decl. ¶ 13.

21  Plaintiff and the other Class Representatives will fairly and adequately protect the Settlement

22  Class's interest.

23          Similarly, the appropriateness of appointing Plaintiff's counsel from Edelson PC as Class

24  Counsel is readily apparent. The Court must only ask whether proposed Class Counsel are

25  unencumbered by conflicts of interest and will vigorously prosecute the action. *Ellis v. Costco*

26  *Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). The answer to both questions is clearly yes.

27

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

1    First, the record discloses no conflicts of interest and counsel are aware of none. *See*

2    Logan Decl. ¶ 14. Proposed Class Counsel have no financial stake in the Defendant, nor do they

3    have any connections to class members that might cause them to privilege certain class members

4    over others. *See id*. Second, proposed Class Counsel's commitment to vigorously prosecuting

5    this case and protecting the interests of the proposed class cannot credibly be challenged. The

6    underlying legal theory of this and other social casino cases was developed by Edelson PC and

7    first raised in related cases more than five years ago—again, by Edelson PC. *See id.* ¶ 15. No

8    other law firm in the country has ever pursued similar claims. *See id.* Over the years, Edelson PC

9    has represented the interests of the proposed class not just in the specific bounds of this case

10   docket, but also in proceedings before the WSGC and before the Washington Legislature. *See id.*

11   ¶ 16. More broadly, proposed Class Counsel are well-qualified and experienced members of the

12   plaintiffs' bar who have extensive experience in class actions of similar size, scope, and

13   complexity to this case. *See id.* ¶¶ 17, 25; Exhibit 2 (Edelson PC Firm Resume). Proposed Class

14   Counsel have frequently been appointed lead class counsel by courts throughout the country and

15   have the resources necessary to conduct litigation of this nature. *See id*. ¶ 17. In other words,

16   Plaintiff's counsel's adequacy is beyond cavil.

17   Consequently, Rule 23(a)'s adequacy requirement is met. *See Jama*, 2017 WL 4758722,

18   at *6 (finding adequacy requirement met when "both the named plaintiffs and plaintiffs' counsel

19   have demonstrated a commitment to vigorously prosecuting [the] action on behalf of the class").

20   **B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3).**

21   In addition to meeting all four of Rule 23(a)'s prerequisites for certification, a proposed

22   class must also satisfy Rule 23(b)(3)'s additional requirements—predominance and superiority.

23   *See* Fed. R. Civ. P. 23(b)(3). Certification is encouraged where, as here, "the actual interests of

24   the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at

25   1022. As detailed below, both the predominance and superiority requirements of Rule 23(b)(3)

26   are satisfied.

27

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-cv-5276-  12

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

1

                1.    <u>Common Questions of Law and Fact Predominate.</u>

2         Common questions predominate here. The Supreme Court has made clear that

3  predominance is a qualitative inquiry: "The predominance inquiry 'asks whether the common,

4  aggregation-enabling, issues in the case are more prevalent or important than the non-common,

5  aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036,

6  1045 (2016) (quoting 2 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:49 (5th ed. 2012)).

7  When considering whether common issues predominate, the court should begin with "the

8  elements of the underlying cause of action." *Reichert v. Keefe Commissary Network, LLC*, 331

9  F.R.D. 541, 553 (W.D. Wash. 2019) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563

10  U.S. 804, 809 (2014)). "More important questions apt to drive the resolution of the litigation are

11  given more weight in the predominance analysis over individualized questions which are of

12  considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835

13  F.3d 1125, 1134 (9th Cir. 2016). As these cases, and the text of the rule make clear, individual

14  questions need not be absent, but merely must occupy less importance to the litigation than

15  common questions.

16         The inquiry is especially straightforward in this case. The showings needed for Plaintiff

17  to prevail on the elements of his claims under the RMLGA and the CPA depend on evidence or

18  legal argument that is common to the class—principally the operation of Defendant's

19  Applications. A factfinder's resolution of questions related to the operation of the Applications—

20  for example, whether the chips sold in the Applications are "things of value"—will resolve

21  questions central to the claims of every class member in one fell swoop, driving the litigation

22  forward. *See Reichert*, 331 F.R.D. at 554–55 (finding predominance satisfied when all or nearly

23  all elements of the class's prima facie case presented common questions); *Taylor v. Universal*

24  *Auto Grp. I, Inc.*, No. 13-cv-5245 KLS, 2014 WL 6654270, at *16 (W.D. Wash. Nov. 24, 2014)

25  (predominance satisfied where "predominant" issue contested by the parties was common to the

26  class). An assessment of each class member's Lifetime Spending Amount will be accomplished

27  by a common and straightforward method: summing their spending evidenced by the data to be

1 provided to the court-appointed Settlement Administrator. *Cf. Bess v. Ocwen Loan Servicing*

2 *LLC*, 334 F.R.D. 432, 436 (W.D. Wash. 2020) (quotation omitted) ("[T]he need for

3 individualized findings as to the amount of damages does not defeat class certification.").

4 Whether the class member has GLBA or non-GLBA claims will also be determined using data

5 provided to the court-appointed Settlement Administrator by Defendant and the Platform

6 Providers. These common questions overwhelm any individualized questions affecting particular

7 class members, either as they relate to the Class's ability to make a prima facie showing of

8 Defendant's liability, or with respect to potential affirmative defenses. And, in any event, the

9 Supreme Court has made clear that the existence of "affirmative defenses peculiar to some

10 individual class members" does not defeat predominance, even if those defenses must be tried

11 separately. *Tyson Foods*, 136 S. Ct. at 1045. Predominance is therefore satisfied.

12             2.  <u>A Class Action Is the Superior Method of Resolving the Controversy.</u>

13         The superiority criterion encompasses at least four considerations: "(A) the class

14 members' interests in individually controlling the prosecution or defense of separate actions; (B)

15 the extent and nature of any litigation concerning the controversy already begun by or against

16 class members; (C) the desirability or undesirability of concentrating the litigation of the claims

17 in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P.

18 23(b)(3). The first and second factors plainly point in favor of certification. "There is no

19 indication that any [class members] have an interest in pursuing their own claims—in fact, it

20 would likely be uneconomical for them to do so. There is also no evidence that certain [class

21 members] have already initiated their own individual actions." *Reichert*, 331 F.R.D. at 556.

22 While some class members have substantial alleged damages, it is difficult to imagine that a

23 rational contingency-fee lawyer would take on *any* individual claim given the time, effort, and

24 resources that Defendant has demonstrated it is willing to commit to defending claims against its

25 Applications. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be

26 dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class

27 certification."). Moreover, the huge number of individuals in the class would overwhelm the

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-cv-5276-  14

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

judicial system if class members were forced to litigate individually. *See Taylor*, 2014 WL 6654270, at *19.

Next, this forum is the clear choice in which to concentrate the litigation. The claims arise under Washington law given that the Class is composed of individuals who played the Applications while in Washington. *See Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, No. 2:16-cv-1211 WBS AC, 2019 WL 358517, at *6 (E.D. Cal. Jan. 29, 2019) ("The fact that all remaining claims are brought under California law weighs in favor of a California federal court adjudicating the dispute."). Moreover, the Court is intimately familiar with the facts and law underlying this action. It would make little sense to force the Parties to start over elsewhere. *See Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 560 (W.D. Wash. 2008) (finding the forum superior because "the Court is already familiar with [p]laintiffs' claims").

Accordingly, a class action is the superior method for adjudicating the controversy between the Parties, and as all requirements of class certification under Rule 23 are met, the proposed Settlement Class should be certified.

## II.   The Proposed Settlement Merits Preliminary Approval.

After determining that the proposed class should be certified, the Court must determine whether the settlement warrants approval. Fed. R. Civ. P. 23(e). This is a two-step process: "(1) preliminary approval of the settlement; and (2) following a notice period to the class, final approval of the settlement at a fairness hearing." *Relente v. Viator, Inc.*, No. 12-cv-05868 JD, 2015 WL 2089178, at *2 (N.D. Cal. May 4, 2015).

At the preliminary approval stage, the court determines merely whether the "proposed settlement [is] within the range of final approval" such that notice should be disseminated to the class. *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. 14-cv-0268-JCC, 2016 WL 4052588, at *4 (W.D. Wash. Feb. 3, 2016); *see also* Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.25 at 3839 (4th ed. 2002). While the Ninth Circuit has a "strong judicial policy" favoring settlement of class actions, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), before the Court preliminarily approves a class action settlement, it "has a

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992

1  responsibility to review a proposed class action settlement to determine whether the settlement is

2  'fundamentally fair, adequate, and reasonable.'" *Wilson v. Maxim Healthcare Servs., Inc.*, No.

3  14-cv-789 RSL, 2017 WL 2988289, at *1 (W.D. Wash. June 20, 2017) (quoting *Staton v. Boeing*

4  *Co.*, 327 F.3d 938, 959 (9th Cir. 2003)); Fed. R. Civ. P. 23(e).

5         Where, as here, a settlement agreement is negotiated prior to adversarial class

6  certification, courts generally look to two guideposts in deciding whether to preliminarily

7  approve the settlement: (1) whether there are any signs of collusion between class counsel and

8  the defendant, and (2) whether the so-called *Churchill* factors suggest the settlement is fair. *In re*

9  *Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (quoting *Churchill*

10 *Vill., L.L.C. v. Gen. Elect.*, 361 F.3d 566, 575 (9th Cir. 2004)). At the preliminary approval stage,

11 this Court can conduct a "less searching" inquiry than at final approval, and "seek[] merely to

12 identify any 'glaring deficiencies' prior to sending notice to class members." *Rinky Dink*, 2016

13 WL 4052588, at *4.

14     **A.     The Proposed Settlement is the Product of Serious, Informed, Non-Collusive**
           **Negotiations.**

15

16         This is not a collusive settlement. It is the product of adversarial litigation and informed

17 by arm's-length negotiations facilitated by a nationally-renowned mediator. *See Rodriguez v. W.*

18 *Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of

19 an arms-length, non-collusive, negotiated resolution."); *Helde v. Knight Transportation, Inc.*, No.

20 2:12-cv-00904 RSL, Dkt. 191 at 2 (W.D. Wash. May 24, 2017) (granting preliminary approval

21 where "Settlement Agreement resulted from extensive arm's-length negotiations, with

22 participation of an experienced mediator"); *Gragg v. Orange CAB Co., Inc.*, No. 12-cv-0576

23 RSL, 2017 WL 785170, at *1 (W.D. Wash. Mar. 1, 2017) (same).

24         Furthermore, this settlement presents none of the red flags the Ninth Circuit has flagged

25 as indicative of potential collusion—(1) "when counsel receive a disproportionate distribution of

26 the settlement, or when the class receives no monetary distribution but class counsel are amply

27 rewarded," (2) "when the parties negotiate a 'clear sailing' arrangement," and (3) "when the

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    parties arrange for fees not awarded to revert to defendants rather than be added to the class

2    fund." *In re Bluetooth*, 654 F.3d at 947 (quotations omitted).

3         *First*, proposed Class Counsel is not receiving a disproportionate distribution of the

4    Settlement Fund or being amply rewarded while the class receives no monetary distribution. To

5    the contrary, proposed Class Counsel have unilaterally limited themselves to a fee petition within

6    the "usual range" for fees in this Circuit—30% of the Settlement Fund. *See Vizcaino v. Microsoft*

7    *Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). And far from receiving coupons or meaningless *cy*

8    *pres* only relief, class members will receive substantial individual cash recoveries.[6] *Second*, there

9    is no "clear sailing" provision in the settlement. *See In re Bluetooth*, 654 F.3d at 947 (defining

10   clear sailing provisions). Defendant is free to object to proposed Class Counsel's fee request

11   should Defendant determine the request is unreasonable. *See* Agreement § 9.1. *Third*, there is no

12   possibility that any funds revert back to Defendant. *See id.* § 1.35.

13        Ultimately, there are no signs of collusion here because there was no collusion here. This

14   settlement is the product of serious, informed, non-collusive negotiations—and that fact militates

15   in favor of preliminary approval.

16   **B.     A *Churchill* Analysis Supports Preliminary Approval.**

17        In addition to looking for possible signs of collusion, courts assessing a proposed class

18   action settlement weigh the *Churchill* factors. Those are:

19        (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
20        duration of further litigation; (3) the risk of maintaining class action status
          throughout the trial; (4) the amount offered in settlement; (5) the extent of
21        discovery completed and the stage of the proceedings; (6) the experience and
          views of counsel; (7) the presence of a governmental participant; and (8) the
22        reaction of the class members of the proposed settlement.

23   *In re Bluetooth*, 654 F.3d at 946 (quoting *Churchill*, 361 F.3d at 575). Here, there is no

24

25   _____
     [6]     Aside from the Class Representatives' right to petition the Court for reasonable incentive awards, no class
26   member will be given preferential treatment at the expense of another. *See Scott v. United Servs. Auto. Ass'n*, No.
     11-cv-1422-JCC, 2013 WL 12251170, at *1 (W.D. Wash. Jan. 7, 2013) (noting preliminary approval generally
27   granted absent "obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of
     the class") (citations omitted).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

governmental participant and the reaction of class members cannot be known until after the class has been notified of the settlement, so the last two factors are not applicable. The other six *Churchill* factors weigh in favor of preliminary approval.

      1.   <u>The Strength of Plaintiff's Case, Risk of Further Litigation, and Risk of Maintaining Class Action Status.</u>

The first three *Churchill* factors—the strength of Plaintiff's case, the risk of further litigation, and the risk of maintaining class action status—are all tied together, and the relevant analysis supports preliminary approval. *See Betorina v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017) (analyzing the first three *Churchill* factors together). The key point here is that while Plaintiff is confident in the strength of his claims and believes he would prevail at class certification and trial, litigating this case to verdict would thrust upon class members substantial risks that are simply unacceptable in light of the immediate and certain cash recovery this settlement makes available.

The most significant of these risks, in Plaintiff's counsel's professional judgment, is that the ISGA's lobbying efforts in Olympia may eventually lead to a retroactive change in the law. *See* Logan Decl. ¶ 18. Plaintiff's counsel have thus far fended off the ISGA's lobbying efforts, but the ISGA and its members—many of them billion-dollar gambling outfits—are formidable opponents. If these cases do not settle now, each legislative cycle the class will be at risk of having their claims eviscerated in the name of "remov[ing] . . . economic uncertainty" by "clarifying" that proposed class members cannot recover under the RMLGA. H.B. 2720, 66th Leg., Reg. Sess. (Wash. 2020). And in addition to lobbying-related risks, it is also of course possible—as with any litigation—that Defendant could prevail on any number of future motions, including motions related to class certification and summary judgment.

Even assuming Plaintiff's counsel fends off the ISGA and Defendant's motions long enough for Plaintiff to try this case to verdict, Defendant's inevitable appeals would take years, further delaying the relief to the class. *See* Logan Decl. ¶ 19; *Rodriguez*, 563 F.3d at 966 ("Inevitable appeals would likely prolong the litigation, and any recovery by class members, for

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    years. This factor, too, favors the settlement."); *Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-

2    05539 BHS, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and

3    any appeals are inherently uncertain and involve significant delay. The [s]ettlement avoids these

4    challenges."). The substantial expense and burden associated with litigating this case not only

5    through trials but also through inevitable appeals further militate in favor of granting preliminary

6    approval now. *See* Logan Decl. ¶ 19; *Rinky Dink*, 2016 WL 4052588, at *5 (finding preliminary

7    approval appropriate when considering the expense of the "additional depositions, expert work,

8    and motion work [that] would have to be completed before trial").

9          In sum, the strength of Plaintiff's case balanced against the risks and expenses of

10   continued litigation weighs strongly in favor of preliminary approval. *Id.* (finding first three

11   *Churchill* factors supported preliminary approval when plaintiffs were confident in their case but

12   continuing to litigate risked losing class certification and was "inherently expensive");

13   *Ikuseghan*, 2016 WL 3976569, at *4 ("Absent the proposed [s]ettlement, [c]lass [m]embers

14   would likely not obtain relief, if any, for a period of years.").

15                   2.    The Amount Offered in Settlement.

16         The next *Churchill* factor, the relief offered in settlement, also clearly favors approval.

17   Six million five hundred thousand dollars ($6,500,000) is, no matter how sliced or diced, a

18   massive recovery for this Washington-only class. It is a significant enough sum that non-GLBA

19   class members with the largest Lifetime Spending Amounts stand to likely recover more than

20   50% of their Lifetime Spending Amounts, and that no participating class member is likely to

21   recover less than 10% of their Lifetime Spending Amount. *See* Weisbrot Decl. ¶ 50; *cf. Officers

22   for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir.

23   1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential

24   recovery will not per se render the settlement inadequate or unfair."). Particularly in the midst of

25   a pandemic-driven recession, these recoveries will be life-changing for many class members. *See*

26   Logan Decl. ¶ 20.

27

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-cv-5276-  19

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

And as compared to other comparable consumer class action settlements, this is an excellent result. *See Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663-JST, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (granting final approval of a net settlement amount representing 13.6% of the plaintiffs' estimated maximum possible recovery at trial); *Stovall-Gusman v. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' estimated maximum recovery at trial).

The prospective relief offered by the settlement buttresses the fairness of the settlement. *See Bennett v. SimplexGrinnell LP*, No. 11-cv-01854-JST, 2015 WL 1849543, at *7 (N.D. Cal. Apr. 22, 2015) (noting "the significant value of the prospective relief also obtained in the settlement agreement" warranted preliminary approval). The settlement requires Huuuge to establish and make publicly available a voluntary self-exclusion policy that will allow players to exclude themselves from further gameplay, to link to that policy prominently within the games, and to have its customer service representatives provide that link to players who contact them and reference or exhibit video game behavior disorders. *See* Agreement § 2.2. These changes, intended to generally mirror the sorts of voluntary self-exclusion programs that states often require casinos to implement, reflect a pioneering—and, in Plaintiff's counsel's view, long-overdue—advancement in social casino self-regulation. And as relevant here, these changes to Huuuge's conduct—in conjunction with the $6.5 million cash fund—militate in favor of approval. *See Officers for Justice*, 688 F.2d at 628 ("It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").

Further, Huuuge has committed to implementing changes to in-game mechanics that prevent players from being forced to purchase additional virtual coins or wait before continuing to play at least one game within the Application they are playing.

For these reasons, the relief secured by this settlement warrants the Court's approval.

        3.      <u>Extent of Discovery Completed and the Stage of the Proceedings.</u>

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1    Next, the extent of discovery completed and the stage of the proceedings demonstrate that

2  the Parties "had enough information to make an informed decision about the strength of their

3  cases and the wisdom of settlement." *Rinky Dink*, 2016 WL 4052588, at *5. The Parties only

4  agreed to mediate after more than two years of contentious litigation, briefing before this Court,

5  and briefing before the Ninth Circuit. *See* Logan Decl. ¶ 21. Consequently, the Parties negotiated

6  the settlement with a crystal-clear understanding of the strengths and weaknesses of the Parties'

7  claims and defenses. *See id.* ¶ 9.

8    Moreover, in the weeks before the scheduled mediation date, Defendant provided

9  Plaintiff with detailed transactional data for virtual chip purchases; the Parties exchanged briefs

10 on the core facts, legal issues, litigation risks, and potential settlement structures; and the Parties

11 supplemented that briefing with extensive written and telephonic correspondence, mediated and

12 shuttled by the Phillips ADR team, clarifying each other's positions in advance of the mediation.

13 *See id.* ¶ 7. At the end of these exchanges, and with the skilled assistance of Judge Phillips and

14 his Phillips ADR team, the Parties were able to hash out a settlement in principle. *See id.* ¶ 8. By

15 then, the Parties were fully informed on all pertinent issues and capable of assessing the benefits

16 of the settlement now before the Court. *See id.* ¶ 9; *Ikuseghan*, 2016 WL 3976569, at *3

17 (approving settlement reached "between experienced attorneys who are familiar . . . with the

18 legal and factual issues of this case in particular"). This factor, too, thus supports preliminary

19 approval.

20        4.    The Experience and Views of Counsel.

21    The final *Churchill* factor to consider here—the views and experience of counsel—

22 likewise demonstrates the proposed settlement warrants preliminary approval. As discussed in

23 Section I(A)(4), *supra*, proposed Class Counsel has extensive experience litigating complex class

24 actions and negotiated this settlement with the best interests of the class in mind. After years of

25 adversarial litigation and substantial mediation efforts with the assistance of Judge Phillips and

26 his staff, proposed Class Counsel is confident that the proposed settlement is fair, reasonable,

27 and adequate, and in the best interests of the class. *See* Logan Decl. ¶ 22; *Rodriguez*, 563 F.3d at

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

967 ("[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *Ikuseghan*, 2016 WL 3976569, at *4 (considering that class counsel, "who are experienced and skilled in class action litigation, support the [s]ettlement as fair, reasonable, and adequate, and in the best interests of the [c]lass as a whole," and approving settlement).

## III.    The Court Should Approve the Proposed Notice Plan.

Upon certification, Due Process and Rule 23 require the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Parties have agreed upon a multi-part notice plan to be carried out by Angeion Group, a well-respected class action settlement administrator. *See, e.g.*, *Smith v. Experian Info. Sols., Inc.*, No. 17-cv-00629-CJC-AFM, 2020 WL 4592788, at *6 (C.D. Cal. Aug. 10, 2020) ("Angeion appears to have extensive experience in administering consumer class action cases."). Defendant has agreed to provide the Settlement Administrator and proposed Class Counsel all Settlement Class Member contact information reasonably available to Defendant, including names, phone numbers, and email addresses. *See* Agreement § 4.1(a). For each Player ID with a Lifetime Spending Amount greater than zero, Defendant must also provide the Player ID's Lifetime Spending Amount, if known, and information sufficient to determine whether the Player ID clicked to "accept" the Huuuge Terms of Use pop-up on or after March 1, 2020 but before the date of execution of the Settlement Agreement. *Id.* Defendant and proposed Class Counsel shall each provide the Settlement Administrator the information reflected in any opt-out letters received by Defendant before the date of the execution of this Settlement Agreement. *Id.* § 4.1(d). Proposed Class Counsel and Defendant's Counsel have also agreed to cooperate to work with the Platform Providers to obtain other information necessary to effectuate the notice and administration program. *Id.* § 4.1(c)-(d).

All of this information will be used by the Settlement Administrator to create the Class

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   List. *Id.* § 4.1(e). Within 35 days of the entry of preliminary approval, the Settlement

2   Administrator will use the Class List to send notice via email substantially in the form attached

3   to the Agreement as Exhibit B, along with an electronic link to the Claim Form, to all Settlement

4   Class Members for whom a valid email address is available in the Class List. *See id.* § 4.2(a). In

5   the event transmission of the email notice results in any "bounce-backs," the Settlement

6   Administrator will, where reasonable, correct any issues that may have caused the "bounce-

7   back" to occur and make a second attempt to re-send the email notice, and will, where possible,

8   send Notice substantially in the form attached to the Agreement as Exhibit C via First Class U.S.

9   Mail. *See id.* The Settlement Administrator will also, where possible, send notice substantially in

10  the form attached as Exhibit C via First Class U.S. Mail to all Settlement Class Members with a

11  Lifetime Spending Amount greater than $100.00. *See id.* Class Counsel anticipates that more

12  than 85,000 Player IDs associated with class members will receive direct notice. *See* Logan Decl.

13  ¶ 23.

14          Within seven days of the entry of preliminary approval, the Settlement Administrator will

15  also establish a Settlement Website at www.hgsettlement.com, which will include the ability to

16  file Claim Forms online. *See* Agreement § 4.2(c). The Notice provided on the Settlement

17  Website will be substantially in the form of Exhibit D to the Agreement, and the website will

18  advise the Settlement Class of the total value of the Settlement Fund and provide Settlement

19  Class Members the ability to approximate their Settlement Payment. *Id.*

20          Finally, the Settlement Administrator will supplement the direct notice program with a

21  digital publication notice program that is estimated to deliver more than ten million (10,000,000)

22  impressions, reaching some 80% of likely Settlement Class Members, and serving members of

23  the target audience with approximately four different digital impressions each. *Id.* § 4.2(d);

24  Weisbrot Decl. ¶ 36, 40. The digital publication notice campaign will run for at least one month

25  and will contain active hyperlinks to the Settlement Website. *See* Agreement § 4.2(d).

26          In addition to reaching the Settlement Class, notice is adequate when it provides the

27  information necessary to make a decision in language that can be readily understood by the

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

1   average class member. Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11:53

2   (4th ed. 2002). That is the case here, where the format and language of each form of notice have

3   been carefully drafted in straightforward, easy-to-read language, and all information required

4   under Rule 23 is present. *See* Exhibits B–D to the Agreement.

5         Because the proposed methods for providing notice to the Class comport with both Rule

6   23 and Due Process, the notice plan should be approved by the Court.

7                               **CONCLUSION**

8         For the foregoing reasons, Plaintiff respectfully requests that the Court (1) certify the

9   proposed class for settlement purposes, (2) appoint Sean Wilson and Heidi Hammer as Class

10  Representatives, (3) appoint Jay Edelson, Rafey S. Balabanian, Todd Logan, Alexander G.

11  Tievsky, and Brandt Silver-Korn of Edelson PC as Class Counsel, (4) grant preliminary approval

12  of the proposed settlement, (5) approve the proposed notice plan, and (6) schedule a final

13  approval hearing.

14

15        DATED this 23rd day of August, 2020.

16

17                                        **SEAN WILSON**, individually and on behalf of all
18                                        others similarly situated,

19

20                                        By:  /s/ Todd Logan

21                                        Rafey S. Balabanian*
                                          rbalabanian@edelson.com
22                                        Todd Logan*
                                          tlogan@edelson.com
23                                        Brandt Silver-Korn*
                                          bsilverkorn@edelson.com
24                                        EDELSON PC
                                          123 Townsend Street, Suite 100
25                                        San Francisco, California 94107
                                          Tel: 415.212.9300/Fax: 415.373.9435
26

27                                        Jay Edelson*

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600 • Fax: 206.682.2992

jedelson@edelson.com
Alexander G. Tievsky*
atievsky@edelson.com
EDELSON PC
350 N LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370/ Fax: 312.589.6378


By: /s/ Cecily C. Shiel
TOUSLEY BRAIN STEPHENS PLLC
Cecily C. Shiel, WSBA #50061
cshiel@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600

*Plaintiff's Attorneys and proposed Class Counsel*
*Admitted *pro hac vice*

Pl's Unopposed Mot. For Preliminary Approval
CASE NO. 18-CV-5276-  25

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
Tel: 206.682.5600  •  Fax: 206.682.2992